# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**MELISSA BOSCH**                                                                            **PLAINTIFF**

**V.**                                    **CASE NO. 4:22CV00677LPR**

**CABOT PUBLIC SCHOOL SUPERINTENDENT**
**TONY THURMAN, CABOT PUBLIC SCHOOL**
**DISTRICT, CITY OF CABOT, ARKANSAS**                              **DEFENDANTS**

## SEPARATE DEFENDANT'S BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

COMES NOW, Separate Defendant, City of Cabot, Arkansas, by and through its counsel, Sara Monaghan, and for its Brief in Support of Motion for Summary Judgment ("MSJ"), states:

## I.    INTRODUCTION

Melissa Bosch, ("Ms. Bosch"), filed suit in this case, under 42 U.S.C. § 1983, claiming that Separate Defendant violated her First Amendment rights to free speech, assembly and association, and Fourteenth Amendment rights to substantive due process, equal protection, and procedural due process. **Amended Complaint ¶¶ 31-38.** In addition, Ms. Bosch alleges that Separate Defendant, pursuant to Ark. Const. Art. 2, violated her rights to free speech, assembly and association, due process, and equal protection. ***Id***. Further, Ms. Bosch claims that Separate Defendant conspired pursuant to 42 U.S.C. § 1985(3) to commit the unlawful acts alleged above. ***Id*. at ¶¶ 13, 39.** As set out fully throughout this Brief, all of Ms. Bosch's claims fail as a matter of law. Thus, the Separate Defendant is entitled to summary judgment on all of Ms. Bosch's claims.

1

## II.  STATEMENT OF UNDISPUTED MATERIAL FACTS

A recitation of the undisputed material facts is contained in Separate Defendant's Statement of Undisputed Material Facts ("SUMF") filed along with this Brief. Due to its size, it is incorporated herein by reference as if repeated word for word.

## III.  SUMMARY JUDGMENT STANDARD

A court should grant summary judgment if "there is no genuine issue of material fact" and "the moving party is entitled to judgment as a matter of law." *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997) (citing Fed. R. Civ. P. 56(c)). The burden is on the movant to establish the absence of a material fact issue by referring to portions of the pleadings, affidavits, depositions, admissions on file, and answers to interrogatories. *Hinkel*, 121 F.3d at 366. The moving party meets its burden merely by "pointing out" to the district court that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party to show that there is a genuine issue to be determined at trial. *Hinkel*, 121 F.3d at 366. In ruling on a summary judgment motion, a court views the facts as most favorable to the nonmoving party and allows that party the benefit of all reasonable inferences to be drawn from the evidence. *Id.*

In order to establish that a genuine issue of material fact exists, the nonmoving party must show that (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party. *RSBI Aero., Inc. v. Affil. FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Grey v. City of Oak Grove, Mo.*, 396 F.3d 1031, 1034 (8th

Cir. 2005) (citing *Celotex*, 477 U.S. at 331). "[S]ummary judgment procedure is properly regarded not as a disfavored shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Emp'rs Mut. Cas. Co. v. Wendland & Utz, Ltd.*, 351 F.3d 890, 893 (8th Cir. 2003) (quoting *Celotex*, 477 U.S. at 327).

## IV.   ARGUMENT

### A. Separate Defendant is entitled to summary judgment on all of Ms. Bosch's claims because no constitutional violation occurred.

Based on the case law set forth below, it is not clearly established that Ms. Bosch had a constitutional right to make statements that disrupt the peaceful function of the school district. Even if the Court finds that Ms. Bosch had a clearly established constitutional right to make such statements, the Cabot Public School District acted within its authority when it limited Ms. Bosch's access to school grounds to preserve the peaceful operation of children's education. **SUMF ¶ 15.** Likewise, the City of Cabot police officers acted well within their authority, as community servants and peace officers, when they delivered the letter to Ms. Bosch and promptly investigated the incident. **SUMF ¶¶ 16-17.** Because the Separate Defendant did not violate any of Ms. Bosch's clearly established rights, Separate Defendant is entitled to summary judgment on all of Ms. Bosch's claims.

### 1. Ms. Bosch's First Amendment claims fail as a matter of law.

Ms. Bosch claims that the Separate Defendant deprived her of her First Amendment rights to freedom of speech and freedom of assembly and association. **Amended Complaint ¶¶ 12, 32-35.** More specifically, Ms. Bosch claims that the Cabot Public School District's letter curtails her constitutional rights to speak about school district matters and freely assemble and associate with others on school grounds. **Amended Complaint ¶ 32.** The First Amendment "protects freedom of

speech…assembly," and logically extends to include the freedom of association. U.S. Const. amend. I; *NAACP v. Alabama*, 357 U.S. 449, 460 (1958).

### a. Right to Free Speech

"The First Amendment prohibits laws 'abridging the freedom of speech.'" *Houston Cmty. Coll. Sys. v. Wilson*, 142 S.Ct. 1253, 1259 (2022) (quoting U.S. Const. amend. I). Thus, "as 'a general matter,'" the First Amendment "prohibits government officials from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech." *Id.* (quoting *Nieves v. Bartlett*, 139 S.Ct. 1715, 1722 (2019)). "To prevail on their retaliation claim, the plaintiffs must show that 'they engaged in protected [First Amendment] activity.'" *Molina v. City of St. Louis*, 59 F.4th 334, 338 (8th Cir. 2023) (alteration in original) (quoting *Quraishi v. St. Charles Cnty.*, 986 F.3d 831, 837 (8th Cir. 2021)). "If they can make that showing, then the focus shifts to whether the officers 'took [an] adverse action ... that would chill a person of ordinary firmness from continuing in the [protected] activity.'" *Id.* (alterations in original) (quoting *Hoyland v. McMenomy*, 869 F.3d 644, 655 (8th Cir. 2017)). Finally, the plaintiffs must prove the officers "would not have taken the adverse action but for harboring 'retaliatory animus' against the plaintiff[s] because of [the] exercise of [their] First Amendment rights." *Mitchell v. Kirchmeier*, 28 F.4th 888, 896 (8th Cir. 2022) (quoting *Nieves*, 139 S.Ct. at 1722).

> ### i. Ms. Bosch did not engage in protected First Amendment speech when she made statements that disrupted the peaceful function of the Cabot Public School District.

The right to free speech is not limitless, particularly when it affects functions on school grounds. *Carey v. Brown*, 447 U.S. 455, 470-71 (1980). The Constitution does not leave the government powerless to protect against disruptive conduct, even speech, in public places such as

schools "that require peace and quiet to carry out their functions." *Id.* (citing *Gregory v. Chicago*, 394 U.S. 111, 118 (1969) (Black, J., concurring)). "School officials…have the authority and responsibility for assuring that parents and third parties conduct themselves appropriately while on school property." *Lovern v. Edwards*, 190 F.3d 648, 655 (4th Cir. 1999) (citing *Carey,* 447 U.S. at 470-71 (1980); *Goss v. Lopez*, 419 U.S. 565, 582-83 (1975). The Supreme Court has held that even peaceful communication may be restricted through reasonable measures where it interferes with "vital governmental facilities." *Carey*, 447 U.S. at 470.

Here, Ms. Bosch does not have a clearly established constitutional right to make statements about "plow[ing] down" Cabot Public School District staff members with a gun**. SUMF ¶ 6.** Her statement is not protected under the First Amendment because it disrupted the vital functions of the school district. *Carey*, 447 U.S. at 470. The disruption is evidenced by multiple videos of the incident circulating on TikTok, Facebook posts from concerned parents and citizens, by word of mouth throughout the City of Cabot, and various news reports across Arkansas and the entire country. **SUMF ¶¶ 7-8.** Ms. Bosch further contributed to the disruption by making a Facebook post and videos about the incident, directing her statement at "a chubby, angry librarian," and later stating that "[t]urning [her] cheek is getting harder and harder." **SUMF ¶ 9.** As word of Ms. Bosch's statement at the meeting spread and more people became concerned, the Cabot Public School District had to be proactive to address safety concerns. **SUMF ¶ 7-8.**

Dr. Tony Thurman, ("Dr. Thurman"), the Superintendent for the Cabot Public School District, stated that the incident caused disruption to the school environment and to school staff members. **SUMF ¶ 15.** In particular, Dr. Thurman stated that the threat seemed to be directed towards Shannon Southard, ("Ms. Southard"), a school librarian with the Cabot Public School District, who Ms. Bosch had conflicts with in the past about library books. *Id*. Regardless of

whether Ms. Bosch intended her statement to be met with concern, the fact is that it did disrupt the peaceful function of the school district. **SUMF ¶ 15.** Given the ongoing disruption to the entire school district, Ms. Bosch's statement does not fall under the umbrella of First Amendment protected speech. Thus, Ms. Bosch cannot demonstrate that the Separate Defendant violated *any* of her constitutional rights under the First Amendment Free Speech Clause.

### ii. The City of Cabot police officers did not harbor any retaliatory motive when they performed their job duties by delivering the letter to Ms. Bosch and promptly investigating the incident.

To prevail on a First Amendment freedom of speech claim, the plaintiff must show that the defendant would not have taken adverse action but for harboring retaliatory animus against the plaintiff for exercising her First Amendment rights. *Nieves,* 139 S.Ct. at 1722. A plaintiff must establish a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury." *Hartman v. Moore*, 547 U.S. 250, 259 (2006). It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury. *Id.* Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive. *Id.* at 260. (recognizing that although it "may be dishonorable to act with an unconstitutional motive," an official's "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway").

Here, in addition to the fact that Ms. Bosch's statement was not an exercise of constitutionally-protected speech, the City of Cabot did not harbor any retaliatory motive in allowing its police officers to serve their community by delivering the letter to Ms. Bosch. **SUMF ¶ 17.** Ms. Bosch failed to point to *any* evidence demonstrating that the City of Cabot harbored any ill motive, let alone a retaliatory motive, towards Ms. Bosch for engaging in constitutionally-

protected conduct. In addition, Sergeant Renee Baugh ("Sergeant Baugh") exercised due diligence in gathering the full audio clip of the incident before making a determination about Ms. Bosch's statement. **SUMF ¶¶ 23-24.** Immediately afterwards, Sergeant Baugh informed both Ms. Bosch and Dr. Thurman of the results of the investigation. **SUMF ¶ 25.** Without a showing of retaliatory motive, Ms. Bosch's First Amendment freedom of speech claim fails as a matter of law.

### b. Right to Assemble and Associate

The First Amendment includes the right to peaceably assemble and associate. *Bates v. City of Little Rock*, 361 U.S. 516, 522-23 (1960). However, it is clear that "(n)either the right to associate nor the right to participate in political activities is absolute." *CSC v. Letter Carriers*, 413 U.S. 548, 567 (1973). Even a "significant interference" with protected rights may be sustained if the State demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgment of associational freedoms. *See Cousins v. Wigoda*, 419 U.S. 477, 488 (1975); *NAACP v. Button*, 371 U.S. 415, 438 (1963); *Shelton v. Tucker*, 364 U.S. 479, 488 (1960). Certainly, the government has a significantly compelling interest in employing means to regulate speech in order to preserve the peaceful function of children's education. *See Carey*, 447 U.S. at 470-71; *Gregory*, 394 U.S. at 118.

The fact that property is owned by the government does not mean that the property is automatically open to the public. *See United States v. Kokinda*, 497 U.S. 720, 725 (1990). Even students do not have an absolute right to access school property, if they pose an ongoing threat of disruption to the educational process. *See Goss*, 419 U.S. at 582. Even more established, a parent does not have the right to unfettered access to school property. *See McCook v. Spriner Sch. Dist.*, 44 Fed. App'x 896, 910-11 (10th Cir. 2002) (finding parents' argument, that their freedom of association was violated because "they were not allowed to attend [school] [b]oard meetings or go

on school property for any school or community event," without merit because the parents "presented no authority establishing a constitutional right to go onto school property"). *See also Meadows v. Lake Travis Indep. Sch. Dist.*, 397 Fed. App'x 1, 1-2 (5th Cir. 2010) (per curiam) (rejecting parents' argument that their freedom of association was violated by school district visitor policy that denied them access to school property); *Thomas v. Helms Mulliss Wicker PLLC*, No. 3:07 CV 52, 2007 WL 1033358, at *2 (W.D.N.C. Apr. 3, 2007) (finding no cause of action existed under Section 1983 for parent who was banned from school property because "a parent's constitutional rights are not violated if a school bans that parent from school property").

Here, in accordance with the foregoing law, Ms. Bosch does not have an unfettered constitutional right to unrestricted access to school grounds. In addition, the restrictions in no way prevent Ms. Bosch from association and assembly off school grounds. **SUMF ¶¶ 19-21.** Given the ongoing disruption to school grounds caused by Ms. Bosch, the school district acted well within its authority in limiting, not prohibiting, Ms. Bosch's access to school grounds. Contrary to Ms. Bosch's allegations in her Amended Complaint, Ms. Bosch could freely drop off and pick up her children from school. **SUMF ¶ 19.** If she needed to access school property for any other reason, Ms. Bosch was only required to inform the school in advance; otherwise, she could freely attend school-related activities. **Id.** In addition, the restrictions in the letter in no way, facially or implicitly, restricted Ms. Bosch from exercising her constitutional right to associate and assemble off school grounds. **SUMF ¶ 21.** As such, Ms. Bosch's freedom of association and assembly was not implicated by the Separate Defendant's actions; thus, her First Amendment claims fail as a matter of law.

For all of the reasons stated above, Separate Defendant is entitled to summary judgment on all of Ms. Bosch's First Amendment claims.

### 2. Ms. Bosch's Fourteenth Amendment claims fail as a matter of law.

Ms. Bosch claims that the Separate Defendant deprived her of her Fourteenth Amendment rights to substantive due process, equal protection, and procedural due process. **Amended Complaint ¶¶ 36-37.** First, Ms. Bosch alleges that her substantive due process rights were violated due to the "arbitrary and unreasonable" nature of the Separate Defendant's exercise of police power. **Amended Complaint ¶ 36.** Second, Ms. Bosch baldly claims that the Separate Defendant violated her equal protection rights by treating her "differently than other similarly situated persons without a justification or basis." **Amended Complaint ¶ 37.** Third, Ms. Bosch alleges that the Separate Defendant denied her procedural due process by providing her with "no meaningful opportunity to be heard." **Amended Complaint ¶ 36.** While all three of these rights are protected under the Constitution, Ms. Bosch fails to state any facts to support a viable Fourteenth Amendment claim. *See* U.S. Const. amend XIV.

### a. Substantive Due Process

The Due Process Clause of the Fourteenth Amendment protects an individual's substantive, fundamental rights from government infringement. *See Akins v. Epperly*, 588 F.3d 1178, 1183 (8th Cir. 2009) ("To establish a substantive due process violation, [the plaintiff] must demonstrate that a fundamental right was violated and that the conduct shocks the conscience."). Among these fundamental rights, "[t]he [Supreme] Court has long recognized that, because the Bill of Rights is designed to secure individual liberty, it must afford the formation and preservation of certain kinds of highly personal relationships a substantial measure of sanctuary from unjustified interference by the State." *U.S. Jaycees*, 468 U.S. at 618. As relevant here, a parent has a fundamental right "to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57 (2000); *Meyer v. Nebraska*, 262 U.S. 390, 399-400 (1923) (determining the right to

"bring up children" is protected by the Fourteenth Amendment).

However, as demonstrated in the First Amendment analysis, parents do not have a fundamental, unlimited right to access school property. *See Carey*, 447 U.S. at 470-71. Thus, Ms. Bosch's First Amendment substantive due process claim must be analyzed under the rational basis test. *Indep. Charities of Am., Inc. v. Minnesota*, 82 F.3d 791, 797 (8th Cir. 1996). Under rational basis review, "classifications are accorded a strong presumption of validity, which is overcome only if the party challenging them negates 'every conceivable basis which might support it.'" *Id.* (quoting *FCC v. Beach Commc'ns, Inc*., 508 U.S. 307, 315 (1993)). Courts have concluded "[a]s long as there is a conceivable rational basis for the official action, it is immaterial that it was not *the* or *a* primary factor in reaching a decision or that it was not actually relied upon by the decisionmakers or that some other nonsuspect irrational factors may have been considered." *Reid v. Rolling Fork Pub. Util. Dist*., 854 F.2d 751, 754 (5th Cir. 1988) (emphasis in original) (citing *McGinnis v. Royster*, 410 U.S. 263, 274-77 (1973)).

Consequently, Separate Defendant did not infringe upon Ms. Bosch's substantive due process rights by limiting her access to school district property. The restrictions related to the legitimate government purpose of promoting the safety of school premises and the peaceful function of the school district. Without factual allegations demonstrating that the Separate Defendant lacked a conceivable basis for its actions, Ms. Bosch's substantive due process argument is only "supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Therefore, the rational basis test is satisfied, and Ms. Bosch's substantive due process claim fails as a matter of law.

### b. Equal Protection

An equal protection analysis proceeds along similar lines as a substantive due process inquiry. Under the Equal Protection Clause, "[a]bsent a suspect classification such as race, courts

review legislative actions under the highly deferential rational basis standard." *DeCrow v. N.D. Workforce Safety & Ins. Fund*, 864 F.3d 989, 992 (8th Cir. 2017) (citations and quotation marks omitted). "In such cases, the Equal Protection Clause requires only a rational means to serve a legitimate end." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 442 (1985); *see also* U.S. Const. amend XIV; *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) ("Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest.").

Here, Ms. Bosch has not plead membership to any class traditionally entitled to heightened Equal Protection scrutiny. Similar to the substantive due process analysis, the rational basis test must be used for the equal protection analysis. *City of Cleburne*, 473 U.S. at 440-442. To prevail on her equal protection claim under the rational basis standard, Ms. Bosch must negate every conceivable basis the Separate Defendant might have in treating her differently than other, similarly situated individuals. *Id.* at 439. Ms. Bosch has failed to make that showing and does not plausibly allege any facts overcoming the presumption of validity to which state action is entitled in this context. On the contrary, there exist a number of plausible grounds upon which the Separate Defendant's actions may satisfy the rational basis inquiry, including the safety and peaceful function of the school district. As such, the Court should grant Separate Defendant summary judgment on Ms. Bosch's claims under the Equal Protection Clause of the Fourteenth Amendment.

### c. Procedural Due Process

Procedural due process protections are triggered when state action deprives an individual of an underlying life, liberty, or property interest. *See Mathews v. Eldridge*, 424 U.S. 319, 347

(1976) (balancing private and government interests with process due). Once an interest has been identified, a court must balance the private interest affected by official action, the risk of erroneous deprivation, the value of additional procedure, and the government's interest. *Id.* at 335.

Though limitations on parental rights can constitute deprivation of a liberty interest, courts have widely determined that exclusion from school property does not require the school to conduct pre-or post-exclusion hearings. *Compare Stanley v. Illinois*, 405 U.S. 645, 651-52 (1972) (outlining general liberty interests involved in parenting a child), *with Justice v. Farley*, No. 5:11-CV-99-BR, 2012 WL 83945, at *3 (E.D.N.C. Jan. 11, 2012) (citing *Miller v. Montgomery Cnty. R-II Sch. Dist., Bd. of Educ.*, No. 2:10 CV 78 DDN, 2011 WL 1299536, at *3 (E.D. Mo. Apr. 1, 2011)) (determining that exclusion from school premises does not constitute "depriv[ation] of a life, liberty, or property interest"); *Cwik v. Dillon*, No. C-1-09-669, 2010 WL 5691404, at *6 (S.D. Ohio Sept. 20, 2010) ("[Because] the Constitution does not afford [a] Plaintiff[ ] the substantive due process right they claim[,]…Defendants have the right to exclude Plaintiff from school grounds, or, as in Plaintiff's case, to require prior authorization, no due process hearing is mandated."); *Mejia v. Holt Pub. Schs.*, No. 5:01-CV-116, 2002 WL 1492205, at *7 (W.D. Mich. Mar. 12, 2002) ("Because this [procedural due process] claim is premised upon the [Plaintiffs'] claim that they have a fundamental right to participate in the education of their child by being present on school property, Defendants are entitled to summary judgment…[as] the constitution does not afford the [Plaintiffs] the substantive due process right they claim.").

As established in the case law above and contrary to Ms. Bosch's claims, the Separate Defendant was not required to provide Ms. Bosch with a "meaningful opportunity to be heard" before or after limiting her access to school grounds. **Amended Complaint ¶ 36.** Ms. Bosch's

exclusion from school property does not require anyone to conduct pre-or post-exclusion hearings. Thus, her procedural due process claim fails as a matter of law.

For all of the reasons stated above, Separate Defendant is entitled to summary judgment on all of Ms. Bosch's Fourteenth Amendment claims.

### 3. Ms. Bosch's claims under Article II of the Arkansas Constitution fail for the same reasons her § 1983 claims fail.

Ms. Bosch also asserts several claims against the Separate Defendant pursuant to Article II of the Arkansas Constitution, including the right to free speech, the right to assembly and association, the right to equal protection, and the right to due process. **Amended Complaint ¶¶ 31-32, 36-38.** The Arkansas Civil Rights Act ("ACRA") prohibits individuals acting under color of state law from depriving persons of their rights, privileges, or immunities secured by the Arkansas Constitution. Ark. Code Ann. §16-123-105; *see West v. Adkins*, 487 U.S. 42, 48-50 (1988). It is stated expressly in the ACRA that courts "must look for guidance to state and federal decision pertaining to actions filed pursuant to the federal civil rights act, 42 U.S.C. §1983," when construing the ACRA. Ark. Code Ann. §16-123-105; *see Island v. Buena Vista Resort*, 352 Ark. 548, 557, 103 S.W.3d 671, 675 (2003). Therefore, Ms. Bosch's claims against Separate Defendant pursuant to §1983 and the ACRA should be analyzed conterminously such that Ms. Bosch's claims under the ACRA fail for the same reasons her § 1983 claims fails.

### 4. Ms. Bosch's civil conspiracy claim fails as a matter of law because she did not provide direct evidence that the Separate Defendant engaged in any conspiracy with the specific intent to deprive her of her constitutional rights.

Ms. Bosch alleges that "the school and law enforcement" conspired to deprive her of her constitutional rights, in violation of 42 U.S.C. § 1985(3). **Amended Complaint ¶ 13.** In order to establish an actionable § 1985(3) conspiracy, a plaintiff must demonstrate that: (1) the defendant engaged in a conspiracy (2) with the intent to deprive the plaintiff, either directly or indirectly, of

equal protection of the laws, or equal privileges and immunities under the laws, and (3) acted in furtherance of the conspiracy, and (4) the plaintiff must be deprived of a right or privilege of a citizen of the United States. *See Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971); *see also Larson v. Miller,* 76 F.3d 1446, 1454 (8th Cir. 1996). In alleging a claim under 42 U.S.C. §1985(3), a plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement. *Marti v. City of Maplewood, Mo.,* 57 F.3d 680, 685 (8th Cir. 1995) (quoting *Employees Betterment Assn v. Omaha,* 883 F.2d 650, 652 (8th Cir. 1989)).

Even if the acts in furtherance of the conspiracy are adequately alleged, a plaintiff must do more than "merely allude to a meeting of the minds…[he] must support the assertion[s] with specific allegations of collusion." *Process Controls Intern., Inc. v. Emerson Process Mgt*., No. 4:10CV645 CDP, 2011 WL 6091722, *3 (E.D. Mo. Dec. 7, 2011) (citing *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.,* 406 F.3d 1052, 1063 (8th Cir. 2005)). A plaintiff must allege sufficient "specific facts" to give rise to an inference of a meeting of the minds among the defendants to violate the plaintiff's constitutional rights. *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010). To be sufficiently specific, a plaintiff "must at least allege that 'the defendants had directed themselves toward an unconstitutional action by virtue of a mutual understanding,' and provide some facts 'suggesting such a meeting of the minds.'" *Smith v. Bacon*, 699 F.2d 434, 436-37 (8th Cir. 1983) (per curiam) (quoting *White v. Walsh*, 649 F.2d 560, 561 (8th Cir. 1981)). "[T]he plaintiff need not show that each participant knew the exact limits of the illegal plan, but the plaintiff must show evidence sufficient to support the conclusion that the defendants reached an agreement to deprive the plaintiff of constitutionally guaranteed rights." *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (quotations and alterations omitted). At the pleading stage, the Court recognizes that "conspiracies are by their nature usually clandestine." *Walsh*, 649 F.2d at 561

14

(citation omitted). "[I]t is a rare case in which the plaintiff will be able to provide direct evidence of a conspiratorial agreement." *Bacon*, 699 F.2d at 437.

Here, Ms. Bosch has not and cannot provide facts showing that the Separate Defendant reached any kind of agreement or understanding with any person to deprive her of her civil rights. Ms. Bosch's bare allegation that " [t]he actions of the defendants, as described in [her] complaint, constitute a conspiracy to violate the plaintiff's civil rights" falls far short of establishing specific allegations of collusion. **Amended Complaint ¶ 39**. Not to mention, as explained in the preceding sections, Ms. Bosch failed to make a cognizable claim for any constitutional deprivation. Therefore, the Separate Defendant is entitled to summary judgment on Ms. Bosch's civil conspiracy claim.

### B. Separate Defendant, as a municipality, cannot be held liable because Ms. Bosch failed to point to any municipal policy or custom that was the moving force behind the alleged constitutional violations.

For municipal liability to attach under § 1983, a plaintiff must prove that a municipal policy or custom was the moving force behind the alleged constitutional violation. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); *see*, e.g., *Handle v. City of Little Rock*, 772 F.Supp. 434, 437 (E.D. Ark 1991) (holding that municipal liability may attach when the alleged unconstitutional act "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [municipal officials]"). The policy or custom requirement means that a municipality cannot be held vicariously liable for its employees' unconstitutional acts. *Monell*, 436 U.S. at 691; *see also Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998) (local government cannot be held liable under § 1983 on respondeat superior theory).

"The written, official policy of a city is to be given great weight in determining what the city's policies are." *Williams-El v. Johnson*, 872 F.2d 224, 230 (8th Cir. 1989). "[A] municipal

policy is not unconstitutional if it might permit unconstitutional conduct in some circumstances; it is unconstitutional only if it 'requires its officers to act unconstitutionally.'" *Handle*, 772 F.Supp. 434, 438 (citing *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1554 (11th Cir. 1989)) (emphasis in the original). A written, official policy that satisfies all statutory and constitutional requirements is constitutional as a matter of law; it cannot be said that such a policy officially requires employees to commit constitutional violations. *See,* e.g., *Andrews v. Fowler*, 98 F.3d 1069, 1077 (8th Cir. 1996). In addition, custom is demonstrated by showing a continuing, widespread, persistent pattern of unconstitutional misconduct and deliberate indifference to or tacit authorization of such conduct after notice of such misconduct. *Rogers v. City of Little Rock, Ark.,* 152 F.3d 790, 800 (8th Cir. 1998).

As discussed above, there has been no constitutional violation in the case at bar. Absent an underlying constitutional violation, the Separate Defendant may not be held liable under § 1983. *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Even assuming a constitutional violation occurred, Ms. Bosch cannot demonstrate that a municipal policy, practice, or custom was the moving force behind the alleged constitutional violation. Ms. Bosch cannot point to any written official policy of the City that requires its employees to act unconstitutionally because the City's written policies are constitutional on their face. Therefore, Ms. Bosch cannot demonstrate that the alleged constitutional violations were caused by the City's official written policies. Ms. Bosch also has not and cannot show a pattern of similar instances where City of Cabot police officers have "unconstitutionally" delivered Cabot Public School District "no trespass" letters to parents whose conduct disrupted the peaceful function of the school district. Without this showing, Ms. Bosch cannot demonstrate any notice to the City of unconstitutional misconduct to which the City was deliberately indifferent and therefore cannot show that a custom exists within the school district

which would have caused any of the named officers to violate any of Ms. Bosch's constitutional rights. As such, the Separate Defendant is entitled to summary judgment.

## V.    CONCLUSION

Separate Defendant is entitled to summary judgment on all of Ms. Bosch's claims. Ms. Bosch's First Amendment claims fail, primarily, because she does not have an unfettered constitutional right to unrestricted access to school grounds. Furthermore, her Fourteenth Amendment claims fail because the Separate Defendant's actions were reasonable in restoring the peaceful function of the school district. For the same reasons, Ms. Bosch's claims under Article II of the Arkansas Constitution fail. In addition, her civil conspiracy claim fails because she did not provide any evidence that the Separate Defendant engaged in any conspiracy with the specific intent to deprive her of her constitutional rights. Finally, even if Ms. Bosch can demonstrate any of these constitutional violations occurred, Separate Defendant cannot be held liable since Ms. Bosch did not mention any municipal policy or custom that was the moving force behind the alleged constitutional violations.

WHEREFORE, Separate Defendant respectfully requests that this Court grant its Motion for Summary Judgment, dismiss Ms. Bosch's Amended Complaint with prejudice, and for all other just and proper relief.

Respectfully submitted,


By:    Sara Monaghan
       Ark. Bar No. 2005276
       Attorney for Separate Defendant
       P.O. Box 38
       North Little Rock, AR 72115
       TELEPHONE: (501)978-6122
       FACSIMILE: (501)537-7262
       EMAIL: smonaghan@arml.org

17