**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**MELISSA BOSCH**                                                                        **PLAINTIFF**

**v.**                                        **CASE NO. 4:22-cv-677-LPR**

**CABOT PUBLIC SCHOOL SUPERINTENDENT**
**TONY THURMAN, CABOT PUBLIC SCHOOL**
**DISTRICT, CITY OF CABOT, ARKANSAS**                                **DEFENDANTS**

<u>**BRIEF IN SUPPORT OF SEPARATE DEFENDANTS**</u>
<u>**CABOT PUBLIC SCHOOL DISTRICT AND SUPERINTENDENT TONY THURMAN'S**</u>
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

Come now Separate Defendants Cabot Public School Superintendent Tony Thurman

("Thurman") and Cabot Public School District ("District") (collectively, "District Defendants"),

by and through their attorneys, Bequette, Billingsley & Kees, P.A., and for their Memorandum

Brief in Support of their Motion for Summary Judgment, state:

## I.        <u>INTRODUCTION</u>

This Memorandum Brief is submitted in support of the District Defendants' Motion for

Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons

discussed herein, the District Defendants are entitled to summary judgment as a matter of law.

## II.        <u>FACTUAL BACKGROUND</u>

This lawsuit arises from a statement made by Plaintiff Melissa Bosch ("Bosch") at a Moms

for Liberty meeting on June 9, 2022:

> . . . [The District librarians] were rude, and they pushed back hard
> and that policy needs to be changed. Like I should not feel like I am
> under a microscope if I am asking someone who is making $85,000
> a year, that librarian is, and still won't answer my questions. I'm
> telling you, if I was—any mental issues, they would all be plowed
> down with a freaking gun by now. . .

Deposition of Bosch, attached to Motion as Ex. A, at 160:14-162:2. While the statement "they would all be plowed down with a freaking gun by now" appears to be directed towards the District librarians, Bosch testified it was directed toward the District librarians, Thurman, the media, and a local group of moms. *Id.* at 52:5-53:15, 104:3-21. This statement was made right after the May 22, 2022, tragic school shooting at Robb Elementary School in Uvalde, Texas. *Id.* at 62:10-15.

Present for Bosch's statement were about twenty meeting attendees, the majority of whom were parents or grandparents of District students, along with a few children. *Id.* at 42:10-43:13. One of the attendees made an audio recording of the meeting. *Id.* at 43:22-44:3. On or around June 13, 2022, the audio recording of Bosch's statement was posted on social media—Facebook and TikTok—to "all the Cabot pages." *Id.* at 72:15-73:15; TikTok Video 1, attached to Motion as Ex. C; TikTok Video 2, attached to Motion as Ex. D. This posting was not done by or at the direction of the District Defendants. Affidavit of Thurman, attached to Motion as Ex. B, at ¶ 3; Ex. A at 46:8-10.

After hearing Bosch's statement, individuals posted on social media that they believed Bosch was a threat. Ex. A at 75:22-76:8. Bosch was aware that individuals were expressing concern on social media that she was a danger and a threat and the police needed to be called. *Id.* at 75:6-10, 76:4-8. For example, one parent posted online, "I wanna know if I should file a complaint, being as my daughter is a library aid at the high school, with the same librarian that she made the threat against." *Id.* at Ex. 4. Another individual responded, "I would. That really would scare me." *Id.* The same parent then stated, "[I]t truly does. And I don't want to take my child from being an aid, she loves it. As a special needs child, it boosts her confidence[.]" *Id.* Another individual posted, "Nobody feels safe with her around their children." *Id.* at 5. In response, another mother posted, "[I]f she's at [Cabot Junior High School] I'm filing a complaint." *Id.* The District

was aware of these and similar concerns from parents and community members after monitoring social media responses to Bosch's statement. Ex. B at ¶ 4. Bosch was generally aware these types of statements were being made. Ex. A at 84:5-9. 12. Bosch claims she was harassed because of the posted audio clip by "all these people that said [she] was a danger." *Id.* at 74:1-11.

Bosch called and reported the posted audio to the police on June 13, 2022, partly because she was concerned, after hearing the audio, that someone was going to shoot up the school and blame her. *Id.* at 71:6-72:3. Bosch reported to the police the audio had been spliced "to make it look like [Bosch] was a threat," because, as Bosch admits, the audio "**sounded like [Bosch] was a danger**." *Id.* at 69:1-25. Despite reporting to the police that the audio recording was spliced, Bosch now admits the audio recording was not spliced or otherwise altered. *Id.* at 54:15-18, 69:6-9. Bosch filed a police report concerning her statement the night before the District filed its police report concerning Bosch's statement. *Id.* at 139:13-15.

In response to Bosch's June 9, 2022, statement, Crossroad's Café, the location for the Moms For Liberty meeting, banned the group from meeting there anymore. *Id.* at 85:5-17. Moms for Liberty - Lonoke County also made a public post regarding Bosch's statement. *Id.* at Ex. 6. The post noted Bosch's statement "was concerning to many people" and "recognize[d] that the words were alarming to many in a time whe[n] school safety is a sensitive subject[.]" *Id.* The group disavowed the statement as "[Bosch's] own" and "not reflect[ive of] the values and opinions of Moms for Liberty Lonoke." *Id.* Moms for Liberty - Lonoke County disbanded and never met again after Bosch's statement was posted online. *Id.* at 87:21-23, 88:13-15.

The media became aware of Bosch's statement and several articles were written referencing Bosch's "threat." For example, one article stated, "Leaked audio from a Moms for Liberty meeting in Lonoke County, Arkansas, reveals a member of the chapter's leadership flippantly **threatening gun violence against librarians**." Media Matters, *A Moms for Liberty*

*Leader Threatens Gun Violence Against Librarians in Newly Leaked Audio* (June 17, 2022), https://www.mediamatters.org/critical-race-theory/moms-liberty-leader-threatens-gun-violence-against-librarians-newly-leaked (emphasis added). The Arkansas Times wrote an article titled, "Secret Moms for Liberty Audio Captures **Threatening Rhetoric Targeting a School Librarian**." Arkansas Times, *Secret Moms for Liberty Audio Captures Threatening Rhetoric Targeting a School Librarian* (June 17, 2022), https://arktimes.com/arkansas-blog/2022/06/16/secret-moms-for-liberty-audio-captures-threatening-rhetoric-targeting-a-school-librarian (emphasis added).

The District Defendants were aware of the concerns from staff, parents, and community members. In addition to concerns expressed on social media, parents called the District to express concern over their children's safety. Ex. B at ¶ 5. Moreover, District staff, in particular the District librarians, expressed concern for their safety based on Bosch's statement. *Id.* at ¶ 6. In response to these concerns, the District issued a public statement:

> The Cabot School District considers the safety of students and staff its highest priority. Alleged threats shall be submitted to law enforcement for investigation. Likewise, the District will take appropriate action to ensure the safety of our students and staff.

*Id.* at ¶ 7, Ex. 2.

Further, in response to Bosch's statement and to help ease the actual and anticipated substantial disruption to the District's operations, the District Defendants decided to require Bosch to provide notification before coming onto District property, except when dropping off and picking up her children from school. *Id.* at ¶ 8. On June 14, 2022, the District sent Bosch a letter, which stated:

> The District has received complaints and concerns about a statement that you made at a Moms for Liberty Meeting at Crossroads Cafe on June 9, 2022. At the meeting, you referred to District staff and stated, "If I was . . . any mental issues, they would all be plowed down with a freaking gun by now."

4

> The District will not tolerate threats against students or staff. Effective immediately, you are not permitted on Cabot School District property except to attend to the affairs of your children. You will be able to drop off and pick up your children from school. You will be able to attend your children's parent/teacher conferences, open house, IEP meetings, 504 meetings, and/or disciplinary meetings after you have scheduled those appointments with building administration at least twenty-four (24) hours in advance. Should it be necessary for you to enter onto Cabot School District property for any other reason, please contact myself or Michael Byrd, Deputy Superintendent, at least twenty-four (24) hours in advance of the event and/or meeting. Failure to follow the directives of this letter will constitute trespassing, and we will request the assistance of local police for enforcement and legal action.

Ex. A at 92:18-93:1, Ex. 7; Ex. B at ¶ 9, Ex. 3. This requirement for notification in limited circumstances is hereinafter referred to as the "Notification Requirement." Bosch understood there were no restrictions on her ability to drop off and pick up her children. Ex. A at 95:11-22. There were also no restrictions on her ability to communicate with the District by telephone, email, or mail. *Id.* at 96:21-97:17, 109:4-22.

Since the Notification Requirement, Bosch provided notification that she would attend school board meetings and her son's football games. *Id.* at 97:18-25; Ex. B at ¶ 12, Ex. 4. She has never been denied access to District property. Ex. A at 98:1-10; Ex. B at ¶ 13.

## III.    ARGUMENT AND AUTHORITY

### A.    SUMMARY JUDGMENT STANDARD.

Rule 56(c) of the Federal Rules of Civil Procedure provides that:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

When the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed 2d 538 (1986) (the non-movant "must do

more than simply show that there is some metaphysical doubt as to the material facts"). Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202, 211 (1986). A plaintiff may not simply point to allegations made in her complaint but must "provide evidence of specific facts creating a triable controversy." *Davis v. U.S. Bancorp*, 383 F.3d 761, 765 (8th Cir. 2004).

Bosch asserts two claims against the District Defendants, under 42 U.S.C. § 1983 and 42 U.S.C. § 1985. Bosch, however, cannot present evidence to support either of these claims. Summary judgment should, therefore, be granted in favor of the District Defendants.

**B.    SUMMARY JUDGMENT SHOULD BE GRANTED ON BOSCH'S SECTION 1983 CLAIM.**

Section 1983 imposes civil liability on a person acting under color of state law who deprives another of the "rights, privileges, or immunities secured by the Constitution and law." 42 U.S.C. § 1983.  Section 1983 does not create substantive rights.  *See Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979).  Rather, it provides a vehicle through which an individual may seek redress when her federally protected rights have been violated by an individual acting under color of state law.  *Livadas v. Bradshaw*, 512 U.S. 107, 132, 114 S. Ct. 2068, 129 L. Ed. 2d 93 (1994). To prevail, a section 1983 plaintiff must prove the "(1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." *Kuha v. City of Minnetonka*, 365 F.3d 590, 606 (8th Cir. 2003) (quoting *Shrum v. Kluck*, 249 F.3d 773, 777 (8th Cir. 2001)). Bosch cannot present evidence to support these necessary elements.

**1.    Bosch Does Not Have a Constitutional Right to Unfettered Access to District Property.**

The United States Supreme Court has cautioned the federal judiciary against intervening "in the resolution of conflicts which arise in the daily operation of school systems and which do

not directly and sharply implicate basic constitutional values." *Epperson v. Arkansas*, 393 U.S. 97, 104, 89 S. Ct. 266, 21 L. Ed. 2d 228 (1968). Because public education is committed to control of state and local authorities, "[j]udicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint." *Id.* "[The Supreme] Court has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 507, 89 S. Ct. 733, 21 L. Ed. 2d 731 (1969); *see also Goss v. Lopez*, 419 U.S. 565, 589-90, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975) (Powell, J., dissenting) ("[S]chool authorities must have broad discretionary authority in the daily operation of public schools. This includes wide latitude with respect to maintaining discipline and good order.").

Courts routinely uphold parent and patron bans from school property because there is no liberty interest in unfettered access to school campuses. *See, e.g., Porter v. Duval Cnty. Sch. Bd.*, 406 Fed. App'x. 460, 462 (11th Cir. 2010) (affirming the dismissal of the plaintiff's claim that school officials violated her constitutional rights by denying her access to school property because the claim was not cognizable under 42 U.S.C. § 1983); *Lovern v. Edwards*, 190 F.3d 648, 655-56 (4th Cir. 1999) (affirming the dismissal of a parent's claim that prohibiting him from entering school property violated his due process rights as frivolous and "obviously without merit."); *Cole v. Montague Bd. of Educ.*, 145 Fed. App'x. 760, 762 (3d Cir. 2005) (holding a claim that a school board violated parents' due process rights by "illegally" banning them from school property lacked merit); *Knight v. Bieneman*, No. 14-cv-2641, 2015 U.S. Dist. LEXIS 4305 (D. Colo. Jan. 14, 2015) ("[P]arents have no constitutional right to physically access school grounds."); *Abegg v. Adams/Arapahoe Sch. Dist. J8/Aurora Pub. Sch.*, No. 12-cv-01084, 2012 U.S. Dist. LEXIS 187055, at *14 (D. Colo. Oct. 9, 2012) (collecting cases holding parents do not have a

constitutional right to access school premises); *Mayberry v. Indep. Sch. Dist. No. 1 of Tulsa Cnty.*, No. 08-CV-416, 2008 U.S. Dist. LEXIS 95375, at *13-14 (N.D. Okla. Nov. 21, 2008) (granting the defendants' motion to dismiss parent's section 1983 action challenging a school ban because "[t]he record is replete with decisions by courts that parents do not have a constitutional right to be on school premises"); *Cunningham v. Lenape Reg'l High Dist. Bd. Of Educ.*, 492 F. Supp. 2d 439, 450-51 (D.N.J. 2007) ("[T]he reality of our times, and indeed common sense, suggests that the public-parents included-cannot have unfettered access to the halls of learning. We are not too far removed from the tragedies of Columbine or the Amish school shooting to forget that the safety of our children and school officials is paramount.")

Courts approve broad bans from school property when based on a threat to public safety. In *Davison v. Rose*, 19 F.4th 626, 637 (4th Cir. 2021), the Fourth Circuit concluded that the issuance of no-trespass letters that prohibited a parent's presence on school property and attendance at any school-sponsored activities did not violate the First Amendment because the parent had "made allusions to American Sniper," said "SHOTGUN" and "BE PREPARED" in reference to public meetings, called the public school a "target rich environment," and made a reference to public officials meeting their creator. In *Mejia v. Holt Pub. Sch.*, No. 5:01-CV-116, 2002 U.S. Dist. LEXIS 12853, at *18-20 (W.D. Mich. Mar. 12, 2002), a district court concluded that school authorities could ban a father from school grounds indefinitely because he masturbated in his car parked in the school parking lot while waiting to pick up his child at an elementary school. In *Wood v. Arnold*, 321 F. Supp. 3d 565, 581 (D. Md. 2018), the district court concluded that a no trespass order did not violate the First Amendment after a parent threatened to disrupt school-related functions. This authority applies to all the constitutional rights that Bosch claims were violated and warrants summary judgment in favor of the District Defendants as to all of Bosch's claims.

2.     **None of the Constitutional Rights Raised by Bosch Support Her Claim for Access to District Property.**

Even assuming, *arguendo*, that Bosch has some right to access District property, her claims nonetheless fail. The District Defendants did not retaliate against any protected First Amendment speech. The District Defendants further have not violated her rights to free speech under the First Amendment, Due Process under the Fourteenth Amendment, associate and assemble under the First Amendment, equal protection under the Fourteenth Amendment, or privileges and immunities under the Fourteenth Amendment. As addressed below, these claims fail even if Bosch has a right to access District property.

a.     There Is No Evidence to Support a First Amendment Retaliation Claim.

The Notification Requirement does not qualify as First Amendment retaliation. To establish a First Amendment retaliation claim, Bosch must show that "(1) [s]he engaged in a protected activity, (2) the government official took adverse action against h[er] that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Rinne v. Camden Cnty.*, 65 F.4th 378, 383 (8th Cir. 2023) (*quoting Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). Bosch cannot present evidence to support any of these necessary elements.

1.     *Bosch did not engage in a protected activity.*

Bosch did not engage in a protected activity under the First Amendment because her statement was a true threat and constitutes a substantial disruption to District operations.

i.     Bosch's statement was a true threat.

Bosch's statement about mowing down District staff with a gun was a true threat. True threats are not protected by the First Amendment. *Doe v. Pulaski Cnty. Special Sch. Dist.*, 306 F.3d 616, 621-23 (8th Cir. 2002); *Counterman v. Colorado*, 143 S. Ct. 2106, 2113, 216 L. Ed. 2d 775 (2023). Although there may be some political or social value associated with threatening words in

some circumstances, the government has an overriding interest in "protecting individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur." *Pulaski Cnty. Special Sch. Dist.*, 306 F.3d at 622 (citing *R.A.V. v. St. Paul*, 505 U.S. 377, 388, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1991)); *Watts v. United States*, 394 U.S. 705, 89 S. Ct. 1399, 22 L. Ed. 2d 664 (1969). To determine what constitutes a true threat, "[the fact-finder] must view the relevant facts to determine whether the recipient of the alleged threat could reasonably conclude that it expresses a determination or intent to injure presently or in the future." *United States v. Ivers*, 967 F.3d 709, 718 (8th Cir. 2020) (quoting *Pulaski Cnty. Special Sch. Dist.*, 306 F.3d at 622). The parties need not prove subjective intent. *United States v. Mabie*, 663 F.3d 322, 333 (8th Cir. 2011). This decision is made "in the context of the totality of the circumstances in which the communication was made." *United States v. Bellrichard*, 994 F.2d 1318, 1323 (8th Cir. 1993). Relevant factors include:

> 1) [T]he reaction of those who heard the alleged threat; 2) whether the threat was conditional; 3) whether the person who made the alleged threat communicated it directly to the object of the threat; 4) whether the speaker had a history of making threats against the person purportedly threatened; and 5) whether the recipient had a reason to believe that the speaker had a propensity to engage in violence.

*Pulaski Cnty. Special Sch. Dist.*, 306 F.3d at 623.

In *Pulaski Cnty. Special Sch. Dist.*, the Eighth Circuit addressed a threat made by a student in a letter written outside of school. *Id.* A friend who saw the letter told the girl to whom the letter was addressed about its contents and later took it to her in school where she read it during a gym class. The author of the letter was a fellow student and former boyfriend who expressed in his letter a "pronounced, contemptuous and depraved hate" for her and referred to her as a "'bitch,' 'slut,' 'ass,' and a 'whore.'" *Id.* at 625. The letter used graphic language and spoke about his desire "to sodomize, rape, and kill" her. *Id.* A student present while the girl read the letter immediately

reported it to a school resource officer who went back to the gym where he found the girl frightened and crying. *Id.* at 620. After a school administrator learned about the letter, its author was suspended. "[I]n the wake of Columbine and Jonesboro," the Eighth Circuit found it "untenable" that school officials learning about the letter "would not have taken some action based on its violent and disturbing content." *Id.* at 626 n.4. Since the letter contained true threats, the Eighth Circuit held the expulsion of the student did not violate the First Amendment.

Subsequently, in *D.J.M. v. Hannibal Public School District # 60*, 647 F.3d 754 (8th Cir. 2011), the court examined a case in which a student engaged in an online instant message conversation with a classmate outside of school. The student had indicated, among other things, that he was inclined to shoot particular students and groups of students at his school. *Id.* at 758. The contents of the conversation reached school officials, who then disciplined the student for his threatening speech. *Id.* at 759. The Court concluded that the student's First Amendment rights had not been violated, in part because true threats of physical violence are generally not protected under the First Amendment. *Id.* at 761. The plaintiff's statements, which indicated that he had access to weapons, an intent "to bring a gun to school to shoot everyone he hates and then himself," and a "desire to kill at least five classmates," were sufficiently serious to be considered true threats, ineligible for First Amendment protection. *Id.* at 762-63.

Similarly, Bosch's statement was a true threat that is not entitled to First Amendment protection. Bosch communicated her statement in public to a group of parents and grandparents of District students. Ex. A at 42:10-43:13. One of the attendees was concerned enough by Bosch's statement to post it on social media. *Id.* at 72:15-73:15. Bosch was further alarmed at hearing her own statement and reported it to the police because she was concerned about a potential school shooting. *Id.* at 71:6-72:3. She reported to the police the audio had been spliced "to make it look

11

like [Bosch] was a threat," because, as Bosch admits, the audio "**sounded like [Bosch] was a danger**." *Id.* at 69:1-25.

Bosch had a history of making vulgar and harassing statements directed toward District staff. Bosch attended a District school board meeting and called District staff "pussies." *Id.* at 124:7-125:1. Bosch claims this term was directed toward the school resource officers. *Id.* at 126:5-15, 127:20-24. Bosch yelled this in front of school-aged children at the meeting. *Id.* at 125:7-17. Bosch had previously equated District librarians to sexual predators. She made a social media post that referred to school staff that allow "sexually explicit books" in schools as sexual predators. *Id.* at 129:2-130:12, Ex. 12. She also posted online a picture of her shooting a gun, indicating to the public she had access to one. *Id.* at 131:22-132:8.

"[I]n the wake of Columbine and Jonesboro," along with various other recent school shootings, including the school shooting in Uvalde that had just occurred, it would have been "untenable" for the District to not take action, given the "violent and disturbing content" of Bosch's statement. *See Pulaski Cnty. Special Sch. Dist.*, 306 F.3d at 626 n.4. Bosch's statement about mowing down District staff with a gun, therefore, is not entitled to First Amendment protection.

ii.     Bosch's statement created a substantial disruption.

Even if Bosch's statement does not constitute a true threat, it nonetheless constitutes a substantial disruption that justifies the Notification Requirement. The substantial disruption analysis is based on the Supreme Court's decision in *Tinker*, 393 U.S. 503. When a report is brought to school officials about a person threatening to shoot specific individuals at school, they have a "difficult" and "important" choice to make about how to react consistent with the First Amendment. *See D.J.M.*, 647 F.3d at 765 (citing *Morse v. Frederick*, 551 U.S. 393, 409, 127 S. Ct. 2618, 168 L. Ed. 2d 290 (2007)).

The Court in *Tinker* explained that "in class or out of it," 393 U.S. at 513 (emphasis added), conduct by a student which "might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities" is not "immunized by the First Amendment." *Id.* at 514. Since student armbands expressing opposition to the Vietnam War were not disruptive to the school environment there, they were protected by the First Amendment. The Court has subsequently described its holding in *Tinker* as prohibiting school officials from suppressing student speech without reasonably concluding that the speech "materially and substantially disrupt[s] the work and discipline of the school." *Morse*, 551 U.S. at 404.

In *Wisniewski v. Board of Education of Weedsport Central School District*, 494 F.3d 34, 36 (2d Cir. 2007), a student sent outside of school an instant message to some friends, portraying an icon with a pistol shooting a bullet and text about killing his English teacher. Another student discovered it and took it to the English teacher. School authorities notified the police, suspended the student, and proposed a long-term suspension. *Id.* at 37-38. In deciding whether the student's First Amendment rights had been violated the Second Circuit chose not to "pause to resolve" whether the student's internet transmission was a true threat, for it considered the *Tinker* standard to be the more appropriate test. *Id.* at 36. There was no dispute that the messages had in fact reached the school and the panel unanimously agreed that it had been "reasonably foreseeable that the [instant messaging] icon would come to the attention of the school authorities and the teacher" and that it would "create a risk of substantial disruption within the school environment." *Id.* at 39-40, n.4. The First Amendment claim had therefore been properly dismissed.

The Eleventh Circuit also used the *Tinker* standard to decide *Boim v. Fulton County School District*, 494 F.3d 978 (11th Cir. 2007), a case involving a student essay which described a dream about shooting a math teacher. It was discovered at school where the student was seen passing it to another student. In deciding her family's First Amendment claims the court ruled that the student

had "clearly caused . . . a material and substantial disruption" to the school. *Id.* at 983. It commended the school authorities for "acting quickly to prevent violence on school property" since it could "only imagine what would have happened if the school officials . . . did nothing about it and the next day [the student] did in fact come to school with a gun and shoot and kill" her intended target, drawing an analogy from *Morse*. *Id.* at 984.

In *D.J.M.*, in which a student sent instant messages talking about getting a gun and shooting students at school, parents and students notified school authorities expressing concerns about student safety and asking what measures the school was taking to protect them. *Id.* a 756, 766. School officials had to spend considerable time dealing with these concerns and ensuring that appropriate safety measures were in place. *Id.* at 766. The district court granted summary judgment to the school district, concluding the school had been substantially disrupted because of the plaintiff's threats, and the Eighth Circuit affirmed that decision. *Id.* The Eight Circuit found it was reasonably foreseeable that the student's threats about shooting specific students in school would be brought to the attention of school authorities and create a risk of substantial disruption within the school environment. *Id.*

Likewise, in this case, Bosch's statement about plowing down the District librarians, Thurman, and community mothers with a gun caused and was reasonably anticipated to cause a substantial disruption to or material interference with the work of the District. Bosch's statement was made in public in front of parents and grandparents of District students. Ex. A at 42:10-43:13. It was, therefore, reasonably foreseeable that the District would learn of the statement and that the statement would create a risk of a substantial disruption of school operations.

The disruption could be seen in the response from parents and community members on social media. *Id.* at 75:6-10, 76:4-8, Exs. 4, 5. Parents were concerned about the safety of their children. *Id.* The District was aware of parent concerns after monitoring social media responses to

Bosch's statement and hearing from parents who called the District directly to express concern. Ex. B at ¶¶ 4-5. Moreover, the District librarians, upon hearing the statement on social media, were concerned about their safety and expressed that concern to the District. *Id.* at ¶ 6. Police were engaged, first by Bosch herself and then by the District, due to both Bosch's and the District's concerns caused by Bosch's statement. Ex. A at 139:13-15, Exs. 3, 9.

The actual and anticipated disruption to school operations continued as the media covered Bosch's statement. One article stated, "Leaked audio from a Moms for Liberty meeting in Lonoke County, Arkansas, reveals a member of the chapter's leadership flippantly threatening gun violence against librarians." Media Matters, *A Moms for Liberty Leader Threatens Gun Violence Against Librarians in Newly Leaked Audio, supra.* Another article states, "An audio recording from a recent Moms for Liberty meeting in Cabot captures a group member musing about gunning down a school librarian over tension about what books are appropriate for young readers." Arkansas Times, *Secret Moms for Liberty Audio Captures Threatening Rhetoric Targeting a School Librarian, supra.* The actual and perceived substantial disruption of District activities caused by Bosch's statement removes it from any First Amendment protection.

2.      *The Notification Requirement does not create a chilling effect.*

Bosch further cannot present evidence to support a First Amendment retaliation claim because there is no evidence of any adverse action that would chill a person of ordinary firmness. In *Jones v. Bay Shore Union Free Sch. Dist.*, 666 F. App'x 92 (2d Cir. 2016), the court addressed a restriction similar to the Notification Requirement. A new superintendent enforced a restriction prohibiting the plaintiff, a parent and former school softball coach, from appearing on district property without the superintendent's permission because the plaintiff had previously been accused of sexual misconduct with students. *Id.* at 93-94. The plaintiff argued that the requirement

violated his due process rights because he had a protected interest in attending school board meetings. *Id.* at 94. The Second Circuit held:

> While there may be a protected interest in attending school board meetings, the school district does not categorically bar [the plaintiff] from attending; it simply requires that he provide advance notice before doing so. Especially considering the school district's interest in protecting students from a person who was discharged from teaching for suspected sexual misconduct with minors, any interest [the plaintiff] may have in attending board meetings *without providing advance notice* is de minimis and insufficient to sustain a due process claim.

*Id.* (emphasis in original).

In this case, there is similarly no evidence of any adverse action against Bosch that would chill a person of ordinary firmness. Bosch was not banned from District property; she was only required to give the District notice that she was entering District property in limited circumstances. Ex. A at Ex. 7. After the Notification Requirement, Bosch requested to attend certain events and has never been denied access to District property. *Id.* at 97:18-98-10. Without any evidence of the District denying Bosch access to District property, she cannot establish a plausible First Amendment retaliation claim. *See Hansen v. Watkins Glen Cent. Sch. Dist.*, No. 17-CV-6143-FPG-JWF, 2019 U.S. Dist. LEXIS 117131, at *20 (W.D.N.Y. July 15, 2019) ("There is no indication in the record that [defendant] would have denied [plaintiff] permission [to enter the school property] when she requested it.").

### 3.   *No evidence motivated by protected activity.*

There is further no evidence the Notification Requirement was motivated by any protected activity. Bosch claims the District violated her freedom of speech in that the District's actions were "directly designed to impact the plaintiff's liberty because she attended a meeting of conservative mothers concerned about their children's education and considering a run of school board," "punishment and a deterrent for others for openly discussing running for school board to make

changes to the [District] administration and having oversight of Thurman's actions," and "an attempt to control the topics, subject matter, and/or nature of the plaintiff's speech." Am. Compl. (Doc. 11) at ¶ 32. Bosch cannot present any evidence that the Notification Requirement was motivated by any of these alleged reasons. To the contrary, the only evidence is that the Notification Requirement was issued solely because of Bosch's statement about mowing down District staff with a gun. Notably, others at the Moms for Liberty meeting were candidates for school board and were involved in the discussions criticizing the District. Ex. A at 101:19-102:4. Yet, no one other than Bosch received the Notification Requirement. *Id.* at 102:5-8.

Bosch's unsupported claims are insufficient to prove the Notification Requirement was issued because of any protected speech. *See Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014) (explaining the third part of the test requires a showing "that the retaliatory motive was a 'substantial factor' or 'but-for cause' of the adverse action") (citing *Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010)). Bosch must present facts showing she was "singled out because of [her] exercise of constitutional rights." *Id.* (quoting *Baribeau*, 596 F.3d at 481). She cannot provide evidence to support this claim. *See Thomas v. Norris Sch. Dist. 160*, No. 8:22CV179, 2022 U.S. Dist. LEXIS 245063, at *12 (D. Neb. Nov. 23, 2022) (holding the plaintiff's allegations were insufficient to show a no-trespass letter was retaliation for his mask-requirement opposition rather than a response to his harassing behavior). Thus, her claim for First Amendment retaliation fails a matter of law.

b.   <u>Bosch's Claim for Violation of Her Right to Free Speech Fails as a Matter of Law.</u>

The District Defendants did not violate Bosch's right to free speech under the First Amendment. It is unclear how Bosch alleges the District Defendants violated her right to free speech. Bosch does not have a First Amendment right to unfettered access to District property. *See, e.g., Johnson v. Perry*, 859 F.3d 156, 175 (2d Cir. 2017) ("[W]e cannot conclude that a parent

17

has a general and unlimited First Amendment right of access to school property."). Moreover, much of the District's property, especially during school hours, is a nonpublic forum. *See Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 267, 108 S. Ct. 562, 98 L. Ed. 2d 592 (1987) ("[S]chool facilities may be deemed to be public forums only if school authorities have by policy or by practice opened those facilities for indiscriminate use by the general public, or by some segment of the public, such as student organizations." (internal quotations and citations omitted)). "Access to a nonpublic forum can be restricted, provided the restrictions are reasonable and are not an effort to suppress opposing viewpoints." *Embry v. Lewis*, 215 F.3d 884, 889 (8th Cir. 2000). Notably, while Arkansas allows equal access to limited open forums on school property, that permitted access does not "limit the authority of the school, its agents, or its employees to maintain order and discipline on school premises [or] to protect the well-being of students and faculty . . . ." Ark. Code Ann. § 6-21-203(b).

For First Amendment purposes, some events on school property, such as a school board meeting, are considered a nonpublic or a limited public forum. *Green v. Nocciero*, 676 F.3d 748, 753 (8th Cir. 2012). In a limited public forum, the public entity "may impose restrictions on speech that are reasonable and viewpoint-neutral." *Victory Through Jesus Sports v. Lee's Summit R-7 Sch. Dist.*, 640 F.3d 329, 334-35 (8th Cir. 2011) (citing *Christian Legal Soc'y Chapter of the Univ. of Cal., Hasting College of Law v. Martinez*, 130 S. Ct. 2971, 2984 n. 11, 177 L. Ed. 2d 838 (2010)). A school district can reasonably restrict public access to this forum "based on the subject matter of the speech, on the identity or status of the speaker, or on the practical need to restrict access for reasons of manageability or the lack of resources to meet total demand." *Green*, 676 F.3d at 753 (citing *Victory Through Jesus Sports*, 640 F.3d at 334-35). This necessarily includes the authority to remove an unruly or disruptive member of the audience "to prevent his badgering, constant

18

interruptions, and disregard for the rules of decorum." *Id.* (citing *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 281 (3d Cir. 2004)).

Bosch's First Amendment rights have never been restricted by the District Defendants because she has never been denied access to District property. Ex. A at 97:18-98-10. Bosch has always been permitted to attend District school board meetings after providing notification. While Bosch takes issue with needing to provide notification, this is not a restriction sufficient to support a First Amendment claim. *See Jones*, 666 F. App'x at 94.

Moreover, the Notification Requirement was both reasonable and viewpoint neutral. "[A] restriction 'need not be the most reasonable or the only reasonable limitation.'" *Victory Through Jesus Sports*, 640 F.3d at 334-35 (citing *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 808, 105 S. Ct. 3439, 87 L. Ed. 2d 567 (1985)). The reasonableness of a restriction on access is supported when "substantial alternative channels" remain open for the restricted communication. *Id.* (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 53, 103 S. Ct. 948, 74 L. Ed. 2d 794 (1983)). In this case, the Notification Requirement was reasonable considering Bosch's statement on shooting District staff and the substantial disruption that resulted. Again, Bosch was not banned from any District premises; she was only required to provide notification when coming to the school, other than to drop off or pick up her children. The Notification Requirement allows the District to evaluate Bosch's attendance to determine if security or other measures may be necessary. Ex. B at ¶ 10. The Notification Requirement was further not based on any viewpoint she may express. Instead, the Notification Requirement was based on her threatening language and the substantial disruption it caused. Thus, the Notification Requirement does not violate Bosch's right to free speech under the First Amendment. *See Wood v. Arnold*, 321 F. Supp. 3d 565, 583 (D. Md. Mar. 26, 2018) (holding a no trespass order, issued

after the plaintiff's threatening speech, was reasonable to ensure that the plaintiff did not disrupt school-related functions reserved for other parents).

There do not appear to be any Eighth Circuit Court of Appeals decisions on whether a parent has a First Amendment right to access school property. There is at least one nonbinding opinion from the Western District of Arkansas that has questioned a parent's First Amendment right of access to school property when the ban includes a limited or designated public forum. *Coffelt v. Omaha Sch. Dist.*, 309 F. Supp. 3d 629, 638 (W.D. Ark. 2018). While the court found the plaintiff parent had a likelihood of success on the merits of his First Amendment claim, that case is easily distinguishable from the present case. The plaintiff in that case was banned from school property after a closed-door meeting with the superintendent and a coach in which the meeting apparently got heated and the plaintiff used profanity. *Id.* at 632. This is not a case arising from a contentious meeting with school officials. Instead, Bosch made a statement about shooting school staff that created a substantial disruption to school operations. The plaintiff in *Coffelt* was further denied permission to attend events on school property except when his daughter was playing athletic games and only during those games. *Id.* at 633. The plaintiff was also required to pay for a security officer to attend school events on a couple of occasions. *Id.* at 632. In contrast, Bosch has never been denied access to District property and has never been required to pay for security for her attendance. Ex. A at 97:18-98-10. She is only required to provide notice of her attendance, unless dropping off or picking up her children. *Id.* at Ex. 7. There was also evidence of parents engaging in similar, if not worse, conduct in *Coffelt*, but those parents had not received similar bans. *Coffelt*, 309 F. Supp. 3d at 633-34. There is no such evidence in this case. The court in *Coffelt* further held that the school's restrictions were not reasonable and viewpoint neutral, given that it resulted from a closed-door meeting where everyone lost their temper. *Id.* at 643. The

Notification Requirement in this case, however, did not arise from a closed-door meeting and has not banned Bosch from attending anything. Thus, *Coffelt* is unhelpful.

c.   Bosch's Due Process Rights Were Not Violated.

Bosch appears to claim violations of both substantive and procedural Due Process. As addressed below, there is no evidence to support either claimed violation.

1.   *There is no substantive Due Process violation.*

As to substantive Due Process, the Due Process Clause of the Fourteenth Amendment protects an individual's fundamental rights from government infringement. *See Akins v. Epperly*, 588 F.3d 1178, 1183 (8th Cir. 2009) ("To establish a substantive due process violation, [the plaintiff] must demonstrate that a fundamental right was violated and that the conduct shocks the conscience."). However, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273, 114 S. Ct. 807, 127 L. Ed. 2d 14 (1993) (citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). To the extent Bosch's claims are more specifically covered under the First Amendment, that analysis is dispositive of her substantive Due Process claim.

Nonetheless, Bosch's substantive Due Process rights have not been violated by the Notification Requirement. Substantive Due Process "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (citations omitted). These fundamental rights include "the right of parents to 'establish a home and bring up children' and 'to control the education of their own.'" *Id.* (citing *Meyer v. Nebraska*, 262 U.S. 390, 399, 401, 67 L. Ed. 1042, 43 S. Ct. 625 (1923)). Parents have a fundamental right "to make decisions concerning the care,

custody, and control of their children." *Id.* at 66; *Meyer*, 262 U.S. at 399-400 (1923) (determining the right to "bring up children" is protected by the Fourteenth Amendment).

However, an individual does not have an unlimited right to access a school's property. *See Carey v. Brown*, 447 U.S. 455, 470-71, 100 S. Ct. 2286, 65 L. Ed. 2d 263 (1980) ("[N]o mandate in our Constitution leaves States and governmental units powerless to pass laws to protect the public from the kind of boisterous and threatening conduct that disturbs the tranquility of spots selected by the people . . . [for] schools." (quoting *Gregory v. Chicago*, 394 U.S. 111, 118, 89 S. Ct. 946, 22 L. Ed. 2d 134 (1969) (Black, J., concurring))); *Lovern*, 190 F.3d at 655 ("School officials have the authority to control students and school personnel on school property, and also have the authority and responsibility for assuring that parents and third parties conduct themselves appropriately while on school property."). Thus, Bosch's parental rights do not guarantee absolute access to her child's school.

Rational basis scrutiny applies to a school district's decision to exclude an individual from its property because there is no fundamental right to enter school premises. *See Hughes v. City of Cedar Rapids*, 840 F.3d 987, 996 (8th Cir. 2016) ("When no fundamental right or suspect class is at issue, a challenged law must pass the rational basis test." (citations omitted)). Under rational basis review, "classifications are accorded a strong presumption of validity, which is overcome only if the party challenging them negates 'every conceivable basis which might support it.'" *Indep. Charities of Am., Inc. v. Minnesota*, 82 F.3d 791, 797 (8th Cir. 1996) (quoting *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993)). Courts have concluded "[a]s long as there is *a* conceivable rational basis for the official action, it is immaterial that it was not *the* or *a* primary factor in reaching a decision or that it was not *actually* relied upon by the decisionmakers or that some *other* nonsuspect irrational factors may have been considered."

*Reid v. Rolling Fork Pub. Util. Dist.*, 854 F.2d 751, 754 (5th Cir. 1988) (emphasis in original) (citing *McGinnis v. Royster*, 410 U.S. 263, 274-77, 93 S. Ct. 1055, 35 L. Ed. 2d 282 (1973)).

Consequently, the District has not infringed upon Bosch's substantive Due Process rights if the Notification Requirement conceivably relates to a legitimate government purpose. The undisputed facts show that the District Defendants meet this burden. The District Defendants have substantial and legitimate interests in keeping teachers, staff, and students safe and preventing a substantial disruption to school operations. Such interests render the District Defendants' actions constitutional. Therefore, the District Defendants satisfy a rational basis analysis of Bosch's substantive Due Process claim. Accordingly, summary judgment should be granted on Bosch's substantive due process claim.

### 2. *There is no procedural Due Process violation.*

Bosch's procedural Due Process rights have likewise not been violated. Procedural Due Process protections are triggered when state action deprives an individual of an underlying life, liberty, or property interest. *See Mathews v. Eldridge*, 424 U.S. 319, 347, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (balancing private and government interests with process due). Once an interest has been identified, a court must balance the private interest affected by official action, the risk of erroneous deprivation, the value of additional procedure, and the government's interest. *Id.* at 335. Though limitations on parental rights can constitute deprivation of a liberty interest, courts have widely determined exclusion from school property does not require the school to conduct pre-or post-exclusion hearings. *Compare Stanley v. Illinois*, 405 U.S. 645, 651-52, 658, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972) (outlining general liberty interest involved in parenting a child), *with Grim v. Pennsbury Sch. Dist.*, No. 14-04217, 2015 U.S. Dist. LEXIS 36478, at *44 (E.D. Pa. Mar. 24, 2015) (holding that the plaintiff did not have a constitutional due process right to access school property); *Lankster v. Williams*, No. 11-00434, 2012 U.S. Dist. LEXIS 37490, at *3 (S.D. Ala.

Mar. 5, 2012) ("Courts have held that members of the general public have neither a liberty nor property interest in being present on a school campus, and absent such an interest, they are not entitled to the procedural due process protections of the Fourteenth Amendment."); *Justice v. Farley*, No. 5:11-CV-99-BR, 2012 U.S. Dist. LEXIS 3284, at *8 (E.D.N.C. Jan. 11, 2012) (determining exclusion from school premises does not constitute deprivation of a life, liberty, or property interest); *Miller v. Montgomery Cty. R-II Sch. Dist.*, No. 2:10 CV 78 DDN, 2011 U.S. Dist. LEXIS 35913, at *9-10 (E.D. Mo. Apr. 1, 2011) ("A parent does not have the right to unfettered access to school property. Therefore, the School District was not required to conduct a hearing before banning plaintiff from entering School District property." (citations omitted)); *Cwik v. Dillon*, No. C-1-09-669, 2010 U.S. Dist. LEXIS 140877, at *18 (S.D. Ohio Sept. 20, 2010) ("[Because] the Constitution does not afford [a] Plaintiff[ ] the substantive due process right they claim[,] . . . Defendants have the right to exclude Plaintiff from school grounds[; thus,] . . . no due process hearing is mandated."); *Mejia*, 2002 U.S. Dist. LEXIS 12853, at *20 ("Because this [procedural due process] claim is premised upon the [Plaintiffs]' claim that they have a fundamental right to participate in the education of their child by being present on school property, Defendants are entitled to summary judgment . . . [as] the constitution does not afford the [Plaintiffs] the substantive due process right they claim.").

Bosch claims she was not provided a meaningful opportunity to be heard before the Notification Requirement was issued. Am. Compl. (Doc. 11) at ¶ 36. The District, however, was under no obligation to provide Bosch with due process prior to the Notification Requirement because Bosch has no life, liberty, or property interest in accessing District property. *See, e.g., Justice*, 2012 U.S. Dist. LEXIS 3284, at *8; *Miller*, 2011 U.S. Dist. LEXIS 35913, at *10-11; *Cwik*, 2010 U.S. Dist. LEXIS 140877, at *18; *Mejia*, 2002 U.S. Dist. LEXIS 12853, at *20. Moreover, because the Notification Requirement does not ban Bosch from District property, but

only requires advance notice in limited circumstances, any interest Bosch may have to accessing District property is insufficient to sustain a procedural Due Process violation. *See Jones*, 666 F. App'x at 94. Given the wide authority school districts possess to administer school property and the limitations to parental rights in this context, there is no evidence to support Bosch's procedural Due Process claim.

        d.    <u>Bosch's Claim for Violation of Her Right to Associate and Assemble Is Legally Deficient.</u>

There is no evidence that Bosch's right to associate or assemble was violated. The United States Supreme Court recognizes "a right to associate for the purpose of engaging in those activities protected by the First Amendment -- speech, assembly, petition for the redress of grievances, and the exercise of religion." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 678, 120 S. Ct. 2446, 147 L. Ed. 2d 544 (2000) (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984)). "[W]hen the State interferes with individuals' selection of those with whom they wish to join in a common endeavor, freedom of association . . . may be implicated." *Id.*

Bosch claims the District Defendants violated her ability "to speak, gather, assemble, and/or associate with other parents, educators, or at events held at the school freely and unrestricted." Am. Comp. (Doc. 11) at ¶ 32(A). Because Bosch does not have a right to unfettered access to District property, the Notification Requirement does not implicate her right to associate or assemble. *See McCook v. Springer Sch. Dist.*, 44 Fed. App'x 896, 910-11 (10th Cir. 2002) (finding parents' argument, that their freedom of assembly and association was violated because "they were not allowed to attend [school] [b]oard meetings or go on school property for any school or community event," without merit because the parents "presented no authority establishing a constitutional right to go onto school property"); *Miller*, 2011 U.S. Dist. LEXIS 35913, at *11 (holding that the plaintiff did not have a right to unfettered access to school property and, therefore,

the plaintiff's freedom of association was not implicated by a complete ban on entering school property).

Moreover, contrary to Bosch's assertion, the District has not interfered with her ability to associate or assemble. Bosch has never been denied access to District property. Ex. A at 97:18-98-10. In *McCook*, the plaintiff parents were barred from school property. 44 Fed. App'x at 910. The plaintiffs brought a claim for violation of their right to assemble and associate to vote on school property. *Id.* at 910. Despite the ban, however, the plaintiffs voted on school property and had the ability to vote by other means, such as through the mail. *Id.* at 910-911. As a result, the court held the plaintiffs' First Amendment freedom of assembly and association claims failed. *Id.* at 911.

Similarly, in this case, Bosch has never been denied access to District property. Ex. A at 97:18-98-10. All her requests to attend events on District property have been granted. *Id.*; Ex B at ¶¶ 12-13. Thus, even assuming, *arguendo*, Bosch had a right to unfettered access to District property, Bosch's right to associate and assemble has not been violated.

e.      Bosch's Equal Protection Claim Fails as a Matter of Law.

Bosch's equal protection claim also fails as a matter of law. Bosch pleads an equal protection "class of one" claim, arguing the District Defendants treated Bosch differently than other similarly situated persons without a justification or basis. Am Compl. (Doc. 11) at ¶ 37. To prevail under this theory, Bosch must present evidence that (1) she is a member of an identifiable class; (2) she was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. *Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000).

Bosch does not allege she was a member of any identifiable class. Even if she was in an identifiable class, there is no evidence that she was treated differently from others similarly situated. Bosch cannot identify any parent who was permitted unrestricted access to District

property following a similar statement about shooting District staff. As such, Bosch cannot support a claim that the District Defendants discriminated against her as a "class of one."

Moreover, like the analysis for substantive due process, Bosch cannot show that the Notification Requirement lacks a rational basis. To prevail on her equal protection claim under the rational basis standard, Bosch must negate every conceivable basis the District might have in treating her differently than other, similarly situated individuals. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001). Bosch cannot make that showing. Bosch cannot present any facts overcoming the presumption of validity to which state action is entitled in this context. On the contrary, the undisputed evidence is that the District Defendants' actions satisfy the rational basis inquiry. The District Defendants have substantial and legitimate interests in keeping teachers, staff, and students safe and preventing a substantial disruption of school operations. Without evidence demonstrating the District Defendants lack a conceivable basis for their actions, Bosch's equal protection claim fails as a matter of law.

f.   Bosch's Privileges and Immunities Were Not Violated.

The Privileges and Immunities Clause of the Fourteenth Amendment protects "rights of national citizenship" such as "the right to inform federal officials of violations of federal law, the right to be free from violence while in the lawful custody of a United States marshal, the right to enter the public lands, the right to vote in national elections, the right to petition Congress for redress of grievances, and the right to pass freely from state to state." *In re Sacred Heart Hosp. of Norristown*, 133 F.3d 237, 245 n.11 (3d Cir. 1998) (internal citations omitted). "[T]he Privileges and Immunities Clause of the Fourteenth Amendment has remained essentially moribund since the Supreme Court's decision in *The Slaughter-House Cases*, 83 U.S. (16 Wall.) 36, 21 L. Ed. 394 (1872), and the Supreme Court has subsequently relied almost exclusively on the Due Process Clause as the source of unenumerated rights." *Id.* at 244 (internal quotation marks omitted). In the

last hundred years, the Supreme Court has only relied on the Privileges and Immunities Clause in connection with the right to travel. *See Saenz v. Roe*, 526 U.S. 489, 119 S. Ct. 1518, 143 L. Ed. 2d 689 (1999).

Bosch does not provide any specific allegation as to how the District Defendants allegedly violated her rights under the Privileges and Immunities Clause. Regardless, the Notification Requirement has no bearing on Bosch's national citizenship rights. The District's premises are not public lands of the United States that may be subject to the Privileges and Immunities Clause. *See United States v. Waddell*, 112 U.S. 76, 79, 5 S. Ct. 35, 28 L. Ed. 673 (1884) ("The right assailed, obstructed, and its exercise prevented or intended to be prevented . . . is very clearly a right wholly dependent upon the act of Congress concerning the settlement and sale of the public lands of the United States. . . . The Constitution of the United States, by Article IV, section 3, in express terms vests in Congress 'the power to dispose of and make all needful rules and regulations respecting the territory or other property of the United States.'"). The District Defendants did not, therefore, deny Bosch of any federal privileges or immunities protected by the Privileges and Immunities Clause.

## C.   SUMMARY JUDGMENT SHOULD BE GRANTED ON BOSCH'S SECTION 1985 CLAIM.

Bosch's claim under section 1985 also fails as a matter of law. For a conspiracy under § 1985(3), Bosch must prove: (1) that Defendants did "conspire," (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the laws, (3) that one or more of the conspirators did, or caused to be done, any act in furtherance of the object of the conspiracy, and (4) that another person was injured in her person or property or deprived of having and exercising any right or privilege of a citizen of the United States. *Larson by Larson v. Miller*,76 F.3d 1446, 1454 (8th Cir. 1996) (citing 42 U.S.C. § 1985(3)). Bosch cannot present evidence to prove any element of this claim.

First, there is no evidence of any conspiracy. To prevail on a claim for conspiracy under 42 U.S.C. § 1985, a plaintiff must present evidence that the defendants reached an agreement. *See City of Omaha Emps. Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652 (8th Cir. 1989). This requires factual support to suggest a meeting of the minds directed toward an unconstitutional action. *See Nelson v. City of McGehee*, 876 F.2d 56, 59 (8th Cir. 1989).

Bosch cannot present evidence showing that any such meeting of the minds between the District Defendants and the City of Cabot occurred. The only role the City had related to Bosch's allegations is delivering the Notification Requirement to Bosch. *See* Ex. A at 93:2-17. This evidence falls short of demonstrating that the District Defendants and the City of Cabot reached a meeting of minds directed towards violating Bosch's constitutional rights. *See Nelson*, 876 F.2d at 59. The City of Cabot had no role in deciding upon the Notification Requirement. Ex. B at ¶ 11. Thus, there is no evidence the District Defendants reached an understanding with the City of Cabot to allegedly violate Bosch's rights. *See City of Omaha*, 883 F.2d at 652-53.

Furthermore, Bosch cannot maintain a section 1985 claim against the District Defendants based on any alleged agreement between the District and Thurman. The intracorporate conspiracy doctrine precludes any conspiracy claim against the District Defendants. *See Kelly v. City of Omaha*, 813 F.3d 1070, 1078 (8th Cir. 2016). Because a conspiracy by its nature involves multiple parties, this doctrine provides that "a local government entity cannot conspire with itself through its agents acting within the scope of their employment." *L.L. Nelson Enters., Inc. v. Cty. of St. Louis, Mo.*, 673 F.3d 799, 812 (8th Cir. 2012). Accordingly, any claimed conspiracy among the District Defendants fails as a matter of law.

Second, even if there was a conspiracy, which is denied, there is no evidence the purpose of any such conspiracy was to deprive Bosch of equal protection of the laws or equal privileges and immunities under the laws. As addressed above, there is no evidence that any equal protection

or privileges and immunities violation occurred. Third, because there is no evidence of any conspiracy, there is no evidence any Defendant did any act in furtherance of any conspiracy. Fourth, because none of Bosch's rights or privileges were violated, Bosch cannot present evidence of any injury resulting from any alleged conspiracy. Thus, Bosch's claim under section 1985 fails as a matter of law.

**D.   SUMMARY JUDGMENT SHOULD BE GRANTED ON ANY STATE CONSTITUTIONAL CLAIMS.**

Bosch cannot maintain a claim based on any alleged Arkansas Constitution violation. Bosch brings two claims, arising under 42 U.S.C. § 1983 and 42 U.S.C. § 1985. Bosch attempts to assert these claims based on alleged violations of the Arkansas Constitution. Am. Compl. (Doc. 11) at ¶¶ 31, 32. Violations of a state constitution cannot by themselves constitute a viable claim under 42 U.S.C. § 1983. *See Ebmeier v. Stump*, 70 F.3d 1012, 1013 (8th Cir. 1995). "Section 1983 guards and vindicates federal rights alone." *Id.*; *see also Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000) ("Violations of state law do not state a claim under 42 U.S.C. § 1983"). Similarly, a section 1985 case can only apply when the actions of the defendant violate the United States Constitution. *See Wintz v. Port Authority of New York & New Jersey*, 551 F. Supp. 1323, 1325 (S.D.N.Y. 1982). Thus, Bosch cannot make a section 1983 or section 1985 claim arising from an alleged violation of the Arkansas Constitution or any other Arkansas law.

Even if Bosch had a valid claim under Arkansas law, because summary judgment should be granted on her federal claims, the Court should decline to exercise jurisdiction over any remaining state law claims. "A district court has broad discretion to decline to exercise supplemental jurisdiction over state law claims after all claims over which the district court had original jurisdiction have been dismissed." *Elmore v. Harbor Freight Tools USA, Inc.*, 844 F.3d 764, 767 (8th Cir. 2016); *see also* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims

over which it has original jurisdiction."). This Court should decline to exercise jurisdiction over any remaining state law claims.

### E.   SUPERINTENDENT THURMAN IS ENTITLED TO QUALIFIED IMMUNITY.

Bosch does not identify if she is suing Thurman in his official or individual capacity. "A suit against a public official in his individual capacity requires that the public official be named in his personal capacity as an individual." *Artis v. Francis Howell North Band Booster Ass'n*, 161 F.3d 1178, 1182 (8th Cir. 1998). Because Bosch does not specifically name Thurman in his individual capacity, it is presumed he is sued only in his official capacity. *Id.*

To the extent Bosch claims to have sued Thurman individually, he is entitled to qualified immunity. Bosch cannot present evidence that Thurman violated clearly established federal law. Qualified immunity protects public officials when they make reasonable, even if mistaken, decisions. *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991); *see also Malley v. Briggs*, 475 U.S. 335, 343, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action assessed in light of the legal rules that were clearly established at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S. Ct. 3034, 7 L. Ed. 2d 523 (1987) (citations and quotation omitted). A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he or she is doing violates that right. *Id.* at 640. A plaintiff must identify either controlling authority or a robust consensus of cases of persuasive authority that placed the statutory or constitutional question beyond debate at the time of the alleged violation. *Kelsay v. Ernst*, 933 F.3d 975, 979 (8th Cir. 2019) (citations and quotations omitted).

Even assuming Bosch could make a case against the District under section 1983 or 1985, Thurman is entitled to qualified immunity unless the law on this federal question is clearly established. Any such law is not clearly established in Bosch's favor. There are no cases of controlling authority in the Eighth Circuit clearly establishing the unrestricted right of access that Bosch claims. Further, the consensus of persuasive authority supports the Notification Requirement being lawful.

In short, the District Defendants acted reasonably in response to a potential threat and substantial disruption of District operations. Even if Thurman's response is ultimately determined to be mistaken, he is nevertheless entitled to qualified immunity. *See, e.g, Jackson v. McCurry*, 762 F. App'x 919, 928 (11th Cir. 2019) (granting qualified immunity to a superintendent who banned a parent from attending a school board meeting after he threatened litigation). For these reasons, any claim against Thurman in his individual capacity must be dismissed.

## F.   PUNITIVE DAMAGES ARE NOT AVAILABLE FOR BOSCH'S CLAIMS.

Bosch cannot recover punitive damages against the District Defendants. The United States Supreme Court has noted the common law presumption against punitive damages for municipalities:

> Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct. Regarding retribution, it remains true that an award of punitive damages against a municipality "punishes" only the taxpayers, who took no part in the commission of the tort. These damages are assessed over and above the amount necessary to compensate the injured party. Thus, there is no question here of equitably distributing the losses resulting from official misconduct. Indeed, punitive damages imposed on a municipality are in effect a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill. Neither reason nor justice suggests that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers.

*Newport v. Fact Concerts*, 453 U.S. 247, 266-67, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981) (internal citations omitted).

In *Newport*, the Court held that because immunity from punitive damages is compatible with both the purposes of 42 U. S. C. § 1983 and general principles of public policy, a municipality is immune from punitive damages under section 1983. *Id.* at 271. *See also Hicks v. Bryant*, No. 4:12-cv-594-KGB, 2013 U.S. Dist. LEXIS 134859, at *35 (E.D. Ark. Sept. 20, 2013) ("Even if [the plaintiff] could establish a constitutional violation, [the defendant city] is immune from punitive damages under § 1983."); *Wolfe v. Fayetteville Ark. Sch. Dist.*, 600 F. Supp. 2d 1011, 1025 (W.D. Ark. 2009) ("Municipal entities, including school districts, are immune from punitive damages under § 1983."). A municipality's punitive damages immunity also applies to section 1985 claims. *Bell v. City of Milwaukee*, 746 F.2d 1205, 1270-71 (7th Cir. 1984) ("The punitive damages rule of . . . *Newport* is not confined to Section 1983 and applies to Section 1985[.]"). Moreover, because a claim against an individual in his official capacity is a claim against the municipality, a plaintiff cannot recover punitive damages from an individual in his official capacity either. *Grissom v. Cole*, No. 3:06-CV-00037, 2008 U.S. Dist. LEXIS 7169, at *4 (E.D. Ark. Jan. 30, 2007). Accordingly, the District Defendants are immune from punitive damages.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, summary judgment should be granted in favor of the District Defendants. Bosch does not have a liberty interest in unfettered access to District property. Moreover, the District Defendants did not retaliate against any protected First Amendment speech, nor did they violate any rights to free speech under the First Amendment, Due Process under the Fourteenth Amendment, associate and assemble under the First Amendment, equal protection under the Fourteenth Amendment, or privileges and immunities under the Fourteenth Amendment. Bosch's claim under section 1985 also fails as a matter of law. As a result, the Court should grant

this Motion for Summary Judgment and dismiss Bosch's claims against the District Defendants with prejudice.

Respectfully submitted,

BEQUETTE, BILLINGSLEY & KEES, P.A.
425 West Capitol Avenue, Suite 3200
Little Rock, AR 72201-3469
Phone: (501) 374-1107
Fax:    (501) 374-5092
Email: jbequette@bbpalaw.com
Email: ckees@bbpalaw.com
Email: pbrick@bbpalaw.com

By:_____**Phillip M. Brick, Jr.**_____
          Jay Bequette, Ark. Bar No. 87012
          Cody Kees, Ark. Bar No. 2012118
          Phillip M. Brick, Jr., Ark. Bar No. 2009116

*Attorneys for District Defendants*