IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

MELISSA BOSCH                                                                    PLAINTIFF

v.                                    Case No.: 4:22-cv-00677-LPR

TONY THURMAN, as Superintendent of Cabot
Public School District;
CABOT PUBLIC SCHOOL DISTRICT; and
CITY OF CABOT, ARKANSAS                                                         DEFENDANTS

<u>ORDER</u>

This is primarily—though not exclusively—a First Amendment retaliation case.  The case revolves around two major events: (1) a statement made by Plaintiff Melissa Bosch at a Moms for Liberty meeting in June of 2022; and (2) the Cabot Public School District's subsequent decision to place limitations and restrictions on Ms. Bosch's ability to enter onto District property.  In her operative Complaint, Ms. Bosch alleged that the District's decision violated numerous provisions of the United States Constitution and at least two provisions of the Arkansas Constitution.  She also alleged that the City of Cabot—by way of its police department—engaged in a conspiracy with the District to deprive her of her constitutional rights.[1]  Based on these allegations, Ms. Bosch sued the Cabot Public School District, the Superintendent of the Cabot Public School District (Dr. Tony Thurman) in his official capacity, and the City of Cabot.[2]

---

[1] There is nothing in the Amended Complaint or in Ms. Bosch's summary judgment papers to suggest that Ms. Bosch was trying to assert anything other than a § 1985 conspiracy claim against the City.  And that makes perfect sense. The basis of all the other claims in this case is § 1983.  The City can only be liable under § 1983 for its own acts.  And all of the § 1983 claims in this case challenge acts of the District, not acts of the City.

[2] *See generally* Am. Compl. (Doc. 11).  In the Amended Complaint, Ms. Bosch did not specify whether she was suing Superintendent Thurman in his individual capacity or his official capacity.  *See generally id.*  As the District and Superintendent Thurman pointed out in their summary judgment papers, the law is clear that this means Ms. Bosch sued Superintendent Thurman in his official capacity only.  *See* Br. in Supp. of Defs.' Mot. for Summ. J. (Doc. 45) at 31 (citing *Artis v. Francis Howell North Band Booster Ass'n*, 161 F.3d 1178, 1182 (8th Cir. 1998)).  At the summary judgment hearing, Ms. Bosch confirmed that all claims against Superintendent Thurman are in his official capacity only.  *See* Feb. 6, 2024 Hr'g Tr. (Rough) at 13.

1

Before the Court are dueling motions for summary judgment.[3]  The motions raise some incredibly important questions of law.  But the Court cannot reach those questions.  For the reasons discussed below, the Court concludes that Ms. Bosch has waived the merits of her case in their entirety.[4]  This is not a decision the Court reaches lightly.  Although the Court has, in past cases, found certain issues or arguments to be waived, the Court has never found a litigant to have waived an entire case except where there has been a total and unmistakable failure to prosecute.  And it weighs heavily on the Court that, absent waiver, at least one claim (the First Amendment retaliation claim with respect to the purportedly threatening statement) would likely have made it to trial and may well have ultimately succeeded.  On the other hand, fairness to both sides dictates that the Court scrupulously enforce the rules of the litigation road, even if doing so leads to a harsh result.  Those rules counsel in favor of granting summary judgment to Defendants on all claims.

## I.   <u>Background Facts and Procedural History</u>

On summary judgment, the Court is supposed to consider the record in a very particular way.  First, the Court adopts and considers all undisputed facts.  Second, as to each genuinely disputed fact that is material to the outcome of the case, the Court adopts and considers the version of the fact that is most favorable to the non-moving party and the reasonable inferences from that

---

[3] *See* Docs. 38, 42, 44.

[4] The applicable Eighth Circuit caselaw speaks in terms of waiver.  *See Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009) (explaining that a party's "failure to oppose a basis for summary judgment constitutes waiver of that argument").  But it's not entirely clear whether "waiver" or "forfeiture" is the most apt way to describe the situation set out in the caselaw.  *See Reinard v. Crown Equip. Corp.*, 983 F.3d 1064, 1066 (8th Cir. 2020) ("[F]orfeiture is the 'failure to make the timely assertion of a right,' whereas waiver is the 'intentional relinquishment or abandonment of a known right.'" (quoting *Hamer v. Neighborhood Hous. Servs.*, 583 U.S. 17, 20 n.1 (2017)).  *See also United States v. Campbell*, 26 F.4th 860, 889–91 (11th Cir. 2022) (en banc) (Pryor, C.J., concurring) (highlighting the differences between waiver and forfeiture with respect to failures of a party to brief an issue).  Whatever the proper nomenclature, the actual content of the Eighth Circuit rule is clear: generally, a party gives up an issue if it fails to respond to the other side's summary judgment argument on that issue.

fact that are most favorable to the non-moving party.[5]  A fact is genuinely disputed if a reasonable jury could decide the fact in favor of either a plaintiff or a defendant.[6]

There is a small quirk when (as in this case) there are dueling motions for summary judgment.  Unless the record in front of the Court is composed entirely of undisputed facts or all of the genuinely disputed facts are immaterial to the outcome of the case, the Court must view the facts differently depending on which summary judgment motion the Court is analyzing.[7]  On Ms. Bosch's Motion for Partial Summary Judgment, the Court must adopt the pro-defense version of any genuinely disputed, material fact.[8]  On the Defendants' Motions for Summary Judgment, the Court must adopt the pro-plaintiff version of any genuinely disputed, material fact.[9]  Given the foregoing, the Court will endeavor in this facts-and-procedure section to use mostly undisputed facts.  Where a fact is both genuinely disputed and material to the outcome of the case, the Court will say so and then explain both versions of the genuinely disputed fact.

This endeavor is made easier in this case because Ms. Bosch did not properly dispute most of the facts set forth in the Defendants' Statements of Undisputed Material Facts.[10]  Pursuant to Federal Rule of Civil Procedure 56(e)(2), "[i]f a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the Court may . . . consider the fact undisputed for

---

[5] *See Quinn v. St. Louis Cnty.*, 653 F.3d 745, 750 (8th Cir. 2011).

[6] *See Liberty Ins. Corp. v. HNTB Corp.*, 87 F.4th 886, 888 (8th Cir. 2023).

[7] *See Pitman Farms v. Kuehl Poultry, LLC*, 48 F.4th 866, 875 (8th Cir. 2022) ("Cross-motions for summary judgment require viewing the evidence in the light most favorable to the plaintiff and defendant in turn, depending on whose motion is being considered.").

[8] *See id*.

[9] *See id*.

[10] *See* Def.'s Statement of Undisputed Material Facts (Doc. 40); Defs.' Statement of Undisputed Material Facts (Doc. 46).

purposes of the motion[.]"[11]  The Court is going to do so here.  And it is worth a small detour to explain why.

Rule 56(c) provides that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute . . . ."  The Local Rules explain how all this is supposed to happen in our District.  Local Rule 56.1(a) requires a party moving for summary judgment to provide "a separate, short and concise statement of the material facts as to which it contends there is no genuine dispute to be tried."  Local Rule 56.1(b) requires that, "[i]f the non-moving party opposes the motion, it shall file, in addition to any response and brief, a separate, short and concise statement of the material facts as to which it contends a genuine dispute exists to be tried."  Local Rule 56.1(c) provides that "[a]ll material facts set forth in the statement filed by the moving party pursuant to [Local Rule 56.1(a)] shall be deemed admitted unless controverted by the statement filed by the non-moving party under [Local Rule 56.1(b)]."

It is black-letter law that Local Rules can only fill in gaps left by the Federal Rules.[12]  Local Rules cannot supersede federal rules.[13]  So the two must be read together.  Doing so requires that

---

[11] The Court is aware that it has other options.  For one example, the Court could "give an opportunity [to the offending party] to properly support or address the fact[.]"  Fed. R. Civ P. 56(e)(1).  But the circumstances of this case counsel application of subsection (e)(2).  Prior to summary judgment, Ms. Bosch was on notice—through both the Local Rules and the Final Scheduling Order—of her responsibility to properly controvert facts set forth by the other side.  *See* Local Rule 56.1(c); Final Scheduling Order (Doc. 19) at 3.  After she failed to do so, the failure (and potential consequence of that failure) was pointed out by the other side in one of the Reply Briefs.  *See* Defs.' Reply in Supp. of Summ. J. (Doc. 66) at 2–3.  Yet Ms. Bosch did not attempt to remedy the problem in the many months between then and oral argument.  Additionally, the failure to properly dispute facts is not the only problem with how Ms. Bosch has litigated this case.  As discussed in more detail below, this failure is of a piece with her failure to address nearly all of the issues raised by the Defendants on summary judgment.  Ms. Bosch is not litigating this case *pro se*.  She has experienced counsel—three of them.  All in all, there is simply no reason for a do-over at this late stage of the summary-judgment proceedings.  And she has not asked for one.  *See* Feb. 6, 2024 Hr'g Tr. (Rough) at 28–31.

[12] *See* Fed. R. Civ. P. 83(a).

[13] *See id.*

the non-moving party's factual submission in response to the moving party's statement of undisputed material facts must not only "dispute" a fact, but must "support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute . . . ."[14]  Otherwise, the fact has not been properly disputed and may thus be deemed undisputed for purposes of summary judgment.[15]

Although this rule should be easily understood from a review of the Federal and Local Rules, that is not the only way Ms. Bosch was on notice of her obligations with respect to disputing facts.  The Court's Final Scheduling Order in this case went out of its way to make those obligations crystal clear:

> The non-moving/opposing party shall respond paragraph by paragraph to the statement of undisputed material facts submitted by the moving party.  The responsive portion of the non-moving opposing party's statement shall repeat the statement verbatim as set forth in the moving party's statement and respond to it by admitting the statement or pointing out that portion of the statement, if any, he or she disputes.  The non-moving/opposing party will state with particularity that portion of the allegation denied, citing to any evidentiary support for the denial.[16]

Because all parties filed affirmative motions for summary judgment, all parties also filed Statements of Undisputed Material Facts.[17]  And, consistent with the foregoing Rules and Order, all parties filed Responses to the various Statements of Undisputed Material Facts.[18]  But, unlike

---

[14] *See* Fed. R. Civ. P. 56(c)(1).

[15] *See* Fed. R. Civ. P. 56(e)(2).

[16] Final Scheduling Order (Doc. 19) at 3.

[17] *See* Docs. 40, 43, 46.  While the parties have titled these statements in various ways, the Court will refer to them as Statements of Undisputed Material Facts for purposes of this Order.

[18] To be clear, the record contains three Statements of Undisputed Material Facts—one from Ms. Bosch (Doc. 43), one from the District and Superintendent (Doc. 46), and one from the City (Doc. 40).  And the record contains four Responses to the Statements of Undisputed Material Facts—one Response from Ms. Bosch to the Statement from the District and Superintendent (Doc. 59), one Response from Ms. Bosch to the Statement from the City of Cabot (Doc. 58), one Response from the District and Superintendent to the Statement from Ms. Bosch (Doc. 57), and one Response from the City to the Statement from Ms. Bosch (Doc. 55).

the Responses from the School District, Superintendent, and City, Ms. Bosch's Responses to the opposing parties' Statements of Undisputed Material Facts are almost entirely insufficient.

In her Response to the City's Statement of Undisputed Material Facts, Ms. Bosch attempts to dispute 12 of the City's 26 statements of fact.[19]  But in each of those 12 situations, Ms. Bosch says nothing more than "[d]isputed by Plaintiff."[20]  She does not explain whether she is disputing the whole statement or only a part of it.[21]  She does not explain why she is disputing the statement.[22]  She does not provide any citation to the record to support her disputation.[23]

In her Response to the Statement of Undisputed Material Facts provided by the School District and Superintendent, Ms. Bosch's attempt to dispute facts doesn't get much better.  She purportedly disputes 39 of the 42 statements of undisputed facts.[24]  But for 35 of the 39 purported disputes, Ms. Bosch says nothing more than "[d]isputed by Plaintiff."[25]  Again, she does not explain whether she is disputing the whole statement or only a part of it.[26]  She does not explain why she is disputing the statement.[27]  She does not provide any citation to the record to support her disputation.[28]

---

[19] *See generally* Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Doc. 58).

[20] *Id*. at 2–3, 5–8.

[21] *See id*.

[22] *See id*.

[23] *See id*.

[24] *See generally* Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 59).

[25] *See id*. at 2–9, 11–12.

[26] *See id*.

[27] *See id*.

[28] *See id*.

Ms. Bosch does enough to properly dispute four statements of fact from the School District and Superintendent.[29]  For those disputes, even though she is less than clear as to what she is specifically disputing, she at least backs up her dispute with deposition excerpts.[30]  So the Court will consider those facts to be disputed facts.[31]  But the ability of Ms. Bosch to sufficiently dispute these four facts cuts against her with respect to all the facts she did not sufficiently dispute.[32]  There can be no doubt Ms. Bosch knew how to dispute a fact.  Whether her failure to do so was a result of legal tactics or legal carelessness, it violated the clear rules of the road.

The appropriate consequence here is to consider as undisputed all of the facts that Ms. Bosch did not properly dispute in her Responses to the Defendants' Statements of Undisputed Material Facts.[33]  But there is a caveat.  Ms. Bosch's affirmative Statement of Undisputed Material Facts (that she had to file along with her Motion for Partial Summary Judgment) is properly supported with citations to the record.[34]  If a statement of fact in that document runs counter to a

---

[29] *See* Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 59) at 2, 5, 10, 11.

[30] *See id.*

[31] This does not answer the question of whether the dispute around each one of these facts is genuine and material.

[32] At oral argument, the Court inquired why Ms. Bosch thought the terse "[d]isputed by Plaintiff" language was sufficient.  *See* Feb. 6, 2024 Hr'g Tr. (Rough) at 28–31.  Ms. Bosch suggested nothing more was required "to dispute something that on its face is not an accurate depiction of the citation provided by the Defendants."  *Id*. at 31.  And, to be punctilious about it, the opening paragraphs of Ms. Bosch's Responses to the Statements of Undisputed Material Facts do generally say that the facts provided by the Defendants "includ[e] misinterpretations from Plaintiff's [d]eposition . . . ."  *See* Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Doc. 58) at 1; Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 59) at 1.  Nonetheless, the Court rejects Ms. Bosch's position.  First, as to each disputed statement (other than the four sufficient disputes), Ms. Bosch's terse disputation language did not explain what was inaccurate about Defendants' statement.  She did not explain that her dispute was based on the record citation provided in the statement itself.  She left the Court to guess.  Moreover, she knew this was not the right way to do it.  The Court knows she knew this was not the right way to do it because of the four disputes she sufficiently made.  In those instances, even though her dispute was similarly about an alleged mischaracterization of the material cited by Defendants, Ms. Bosch provided the citation (or deposition excerpt) on which she based her dispute.  There is no good reason why she didn't do the same for all her purported disputes.

[33] *See* Fed. R. Civ. P. 56(e)(2).

[34] *See generally* Pl.'s Statement of Undisputed Material Facts (Doc. 43).

statement of fact in the Defendants' Statements of Undisputed Material Facts, then the Court will treat the fact as disputed for purposes of all of the pending summary judgment motions.[35]

With the foregoing in mind, we can now turn in earnest to the background facts and procedural history of this case.

## A. **Background Facts**

Plaintiff Melissa Bosch has kids who attend two schools in the Cabot Public School District.[36]  The Superintendent of the Cabot Public School District is Dr. Tony Thurman.[37]  On June 14, 2022, Dr. Thurman asked the Cabot Police to deliver a letter to Ms. Bosch.[38]  The Cabot Police delivered (and read) the letter to Ms. Bosch on the same day.[39]  The substance of this letter is reproduced here:

> Dear Ms. Bosch,
>
> The District has received complaints and concerns about a statement that you made at a Moms for Liberty Meeting at Crossroads Cafe on June 9, 2022.  At the meeting, you referred to District staff and stated, "If I was…any mental issues, they would all be plowed down with a freaking gun by now."
>
> The District will not tolerate threats against students or staff.  Effective immediately, you are not permitted on Cabot School District property except to attend to the affairs of your children.  You will be able to drop off and pick up your children from school.  You will be able to attend your children's parent/teacher conferences, open house, IEP meetings, 504 meetings, and/or disciplinary meetings after you have scheduled those appointments with building administration at least twenty-four (24) hours in advance.  Should it be necessary for you to enter onto Cabot School District property for any other reason, please contact myself or Michael Byrd, Deputy Superintendent, at least twenty-four (24) hours in advance of the event and/or meeting.  Failure to follow the directives of this letter will constitute trespassing, and we will request the assistance of local police for enforcement and legal action.

---

[35] Again, this does not resolve whether a particular factual dispute is genuine and material.

[36] *See* Ex. 1 (Dep. of Melissa Bosch) to Defs.' Mot. for Summ. J. (Doc. 44-1) at 9:5–13.

[37] *See* Ex. 2 (Aff. of Dr. Tony Thurman) to Defs.' Mot. for Summ. J. (Doc. 44-2) ¶ 2.

[38] *See* Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Doc. 58) ¶ 17.

[39] *See id.* ¶ 18.

Sincerely,

Dr. Tony Thurman
Superintendent[40]

This letter is at the heart of the instant case.  So it is important to understand both why the letter was issued and what the letter does.[41]

### 1.  __The Lead-Up to the Letter__

The letter references a statement made by Ms. Bosch at a June 9, 2022 Moms for Liberty meeting.[42]  And it is true that, on June 9, 2022, Ms. Bosch had attended a meeting of the Lonoke County chapter of Moms for Liberty.[43]  Moms for Liberty is an organization that had "become active in the local school districts . . .[,] [would] try to find people to run for school board, review curriculum and the policies, and make sure schools [were] following [the curriculum and policies]."[44]  The June 9, 2022 meeting included both members of the group and members of the general public.[45]  Overall there were about twenty meeting attendees, the majority of whom were parents or grandparents of District students.[46]  There were a few kids present too.[47]

---

[40] Ex. 2 (Letter) to Pl.'s Mot. for Partial Summ. J. (Doc. 42-2).

[41] In addition to the letter, Dr. Thurman filed a police report and asked the Cabot Police to investigate and determine whether Ms. Bosch had committed a crime.  *See* Ex. 9 to Ex. 1 (Dep. of Melissa Bosch) of Defs.' Mot. for Summ. J. (Doc. 44-1) at 72–76.  The Court does not read the Amended Complaint to assert that the request to investigate or the investigation itself were violations of the federal or state constitutions.  *See generally* Am. Compl. (Doc. 11).

[42] *See* Ex. 2 (Letter) to Pl.'s Mot. for Partial Summ. J. (Doc. 42-2).

[43] *See* Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Doc. 58) ¶ 1.

[44] *See* Ex. 1 (Dep. of Melissa Bosch) to Defs.' Mot. for Summ. J. (Doc. 44-1) at 36:1–4.

[45] *See id*. at 42:10-43:6; Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Doc. 58) ¶ 3.

[46] *See* Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Doc. 58) ¶ 3.

[47] *See id*.

The record in this case includes an audio recording of the entire June 9, 2022 meeting.[48] That is because, unbeknownst to Ms. Bosch or other members of Moms for Liberty, someone was surreptitiously taping the meeting.[49]  The audio reveals that members of the chapter, including Ms. Bosch, were actively involved in local school politics and policy, were considering creating a charter school that would potentially compete for students with the Cabot Public School District, and were recruiting candidates for school board races.[50]  The audio also reveals that members of the chapter, including Ms. Bosch, were frustrated with some of the administrators and staff of the Cabot Public School District for a variety of reasons.[51]

The audio is about one hour and forty-seven minutes long.[52]  The audio begins well before the meeting formally starts.[53]  The meeting itself lasted approximately an hour and twenty minutes.[54]  About 80 minutes into the audio recording, Ms. Bosch can be heard complaining about an interaction between herself and school staff (including a school librarian).[55]  The interaction was related to the District's policy concerning school library books.[56]  Ms. Bosch voiced frustration that "they were rude," would not answer her questions, and "pushed back" on her requests.[57]  She then said—in a somewhat more dramatic voice than she had used during the rest of the meeting— "I'm telling you, if I was any mental issues, they would all be plowed down with a freaking gun

---

[48] *See* Ex. 2 (Audio Recording) to Ex. 1 (Dep. of Melissa Bosch) of Defs.' Mot. for Summ. J. (Doc. 44-1).

[49] *See* Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Doc. 58) ¶ 4.

[50] *See, e.g.*, Ex. 2 (Audio Recording) to Ex. 1 (Dep. of Melissa Bosch) of Defs.' Mot. for Summ. J. (Doc. 44-1) at 14:05–25:15.

[51] *See id.* at 31:27–1:23:01.

[52] *See generally id.*

[53] *See id.* at 0:01–28:58.

[54] *See id.* at 28:58–1:47:47.

[55] *See id.* at 1:19:56.

[56] *See id.*

[57] *See id.* at 1:22:06–09.

by now because I have had it."[58]  According to Ms. Bosch's deposition testimony, her statement was directed toward the District librarians, Dr. Thurman, the media, and a local group of Cabot moms.[59]  Immediately after Ms. Bosch made her statement, laughter can be heard on the audio.[60] It is unclear how many people are laughing, who is laughing, or whether Ms. Bosch was laughing.[61] Someone else then chimed in about how "you can't be a conservative republican and have one moment of weakness where you flip," to which Ms. Bosch responded, "I know."[62]

Other than what is noted above, there is no evidence that anyone said anything to Ms. Bosch or anyone else about her statement during the meeting or immediately after the meeting. However, four days later, on June 13, 2022, one or more people anonymously posted on Facebook and TikTok short clips of the audio recording that included Ms. Bosch's statement.[63]  After hearing the statement online, an unidentified number of individuals posted on social media that they

---

[58] *Id.* at 1:22:23–31.  Ms. Bosch adds something about being either a patient person or not a patient person, but what she said cannot be clearly deciphered from listening to the audio.  *See id.* at 1:22:30–32.  And neither party discusses this part of her statement.  After this unclear statement, Ms. Bosch ends her comment with a dramatic "ugh."  *See id.* at 1:22:32.

[59] *See* Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 59) ¶ 2.

[60] *See* Ex. 2 (Audio Recording) to Ex. 1 (Dep. of Melissa Bosch) of Defs.' Mot. for Summ. J. (Doc. 44-1) at 1:22:28–33.

[61] *See id.*

[62] *See id.* at 1:22:34–38.

[63] *See* Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 59) ¶ 6; Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Doc. 58) ¶ 5; Ex. 1 (Dep. of Melissa Bosch) to Defs.' Mot. for Summ. J. (Doc. 44-1) at 72:21–23.

believed Ms. Bosch was a threat.[64]  The record specifically reveals four people voicing concerns, but implies there were more.[65]

   In any event, it is undisputed that the District quickly became aware of these four concerns "and similar concerns from parents and community members after monitoring social media responses" to the audio clip.[66]  It is also undisputed that "[i]n addition to concerns expressed on social media, parents of District students called the District to express concern over their children's safety" because of Ms. Bosch's statement.[67]  Still, aside from knowing the number is something greater than four, how many parents overall voiced concerns on social media or directly to the District is unknown.  We do know, however, that parents were not the only ones to voice concerns.  District staff, in particular some District librarians, "contacted the District and expressed concern for their safety based on [Ms.] Bosch's statement."[68]  (The record does not reveal anything more about the nature and extent of the concerns expressed by District staff.)  A few articles concerning the statements were published in local papers and on national news websites.[69]

   On June 13, 2022—the same day that the short audio clip of the Moms for Liberty meeting was posted—Ms. Bosch called the police to file a report because she "felt like what was posted

---

[64] *See* Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 59) ¶ 8.  For example, one parent commented on Facebook: "I wanna know if I should file a complaint, being as my daughter is a library aid[e] at the high school, with the same librarian that [Ms. Bosch] made the threat against . . . ."  Ex. 4 (Facebook Post) to Ex. 1 (Dep. of Melissa Bosch) of Defs.' Mot. for Summ. J. (Doc. 44-1) at 55.  Others responded to this comment, writing, for example, "[t]hat would really scare me[,]" and ". . . I would be worried as well!  That lady has no business on any school[.]"  *Id.*  The same parent who remarked that Ms. Bosch had no business at the school also commented that "[n]obody feels safe with [Ms. Bosch] around their children."  Ex. 5 (Facebook Post) to Ex. 1 (Dep. of Melissa Bosch) of Defs.' Mot. for Summ. J. (Doc. 44-1) at 56.

[65] *See* Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 59) ¶¶ 12, 13.

[66] *Id.* ¶ 12.

[67] *Id.* ¶ 24.

[68] *See id.* ¶ 25.

[69] *See* Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Doc. 58) ¶ 8; Ex. 7 (*Arkansas Times* Article) to Def.'s Statement of Undisputed Facts (Doc. 40-7) at 1–3; Ex. 8 (*Media Matters* Article) to Def.'s Statement of Undisputed Material Facts (Doc. 40-8) at 1–2.

online sounded like it was spliced to make it look like [she] was a threat."[70]  At that time, she expressed that she was concerned because she thought the purportedly spliced audio clip "sounded like [she] was a danger."[71]  We know now that the audio clip was not spliced or otherwise altered, although it was only a small clip of a much longer meeting.[72]

This brings us back to the District's issuance of the letter on June 14, 2022.  Superintendent Thurman issued the letter without having spoken to Ms. Bosch.[73]  He explained to the Cabot Police Chief that he was issuing the letter at the direction of the Cabot School Board.[74]  Dr. Thurman's statements to this effect were captured on the bodycam recording of the Cabot Police officer who was asked to deliver the letter to Ms. Bosch.[75]  Specifically, Dr. Thurman said to the Chief that, "my board wants me to make a [police] report" and "our board also wants to send her a letter of no-trespass to be provided to her immediately."[76]  In his affidavit, Dr Thurman testified that, "[i]n response to Bosch's statement and to help ease the actual and anticipated substantial disruption to the District's operations, the District decided to require Bosch to provide notification before coming onto District property, except when dropping off and picking up her children from school."[77]  No other Moms for Liberty member received such a letter.[78]

---

[70] Ex. 1 (Dep. of Melissa Bosch) to Defs.' Mot. for Summ. J. (Doc. 44-1) at 68:19–69:4.

[71] *See* Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 59) ¶ 16.

[72] *See id.* ¶ 17.

[73] *See* Defs.' Resp. to Pl.'s Statement of Undisputed Material Facts (Doc. 57) ¶ 10.

[74] *See* Ex. 12 (First Police Body Camera Video) to Def.'s Statement of Undisputed Material Facts (Doc. 40-12) at 13:53–58.

[75] *See id.*

[76] *Id.* at 13:44–58.

[77] Ex. 2 (Aff. of Dr. Thurman) to Defs.' Mot. for Summ. J. (Doc. 44-2) ¶ 8.

[78] *See* Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 59) ¶ 33.

2.  __What Happened After Ms. Bosch Got the Letter__

As explored at oral argument, the scope of the restrictions placed on Ms. Bosch by the letter is not entirely clear from the letter's text.[79]  One could read the letter as saying Ms. Bosch is only going to be allowed on District property to tend to the affairs of her kids.[80]  But one could read the letter as saying that she may or will be allowed on District property for other reasons, so long as she gives 24-hours' notice.[81]  It depends on whether a reader gives primary effect to the second sentence of the second paragraph or the fifth sentence of the second paragraph.

There is, however, some clarity as to what has happened since the letter.  It is undisputed that Ms. Bosch understood that there were no restrictions on her ability to drop off or pick up her children at school.[82]  And there is no evidence that Ms. Bosch has been unable to do so at her pleasure.[83]  Ms. Bosch has notified the District that she will attend her son's football games and school board meetings.[84]  The District has never denied her access to the games or the meetings.[85]  Ms. Bosch has testified that she has stopped going to the track, and she has refrained from going to the tennis courts and baseball fields because she doesn't think she should have to ask permission or give notice to do those things.[86]  Because she hasn't notified the school of her desire to use the

---

[79] *See* Feb. 6, 2024 Hr'g Tr. (Rough) at 56–59.

[80] *See* Ex. 2 (Letter) to Pl.'s Mot. for Partial Summ. J. (Doc. 42-2) ("Effective immediately, you are not permitted on Cabot School District property except to attend to the affairs of your children.").

[81] *See id.* ("Should it be necessary for you to enter onto Cabot School District property for any other reason, please contact myself or Michael Byrd, Deputy Superintendent, at least twenty-four (24) hours in advance of the event and/or meeting.").

[82] *See* Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 59) ¶ 30.

[83] *See id.* ¶¶ 30, 31, 35.

[84] *See* Ex. 1 (Dep. Of Melissa Bosch) to Defs.' Mot. for Summ. J. (Doc. 44-1) at 165:5–7; Ex. 2 (Email) to Defs.' Mot. for Summ. J. (Doc. 44-2) at 8, 10, 11.

[85]*See* Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 59) ¶ 35.  *See also* Ex. 1 (Dep. of Melissa Bosch) to Defs.' Mot. for Summ. J. (Doc. 44-1) at 165:5–12.

[86] *See* Ex. 1 (Dep. of Melissa Bosch) to Defs.' Mot. for Summ. J. (Doc. 44-1) at 97:24–25, 162:14–165:4.

track, tennis courts, or baseball fields, we do not know what the District would say in response to such requests.

The letter remains in effect despite the fact that the Cabot Police decided that Ms. Bosch's statement "was not made in the context of a threat[,]" and thus Ms. Bosch "would not be [criminally] charged . . . ."[87]  Ms. Bosch was not given the opportunity for a hearing concerning the District's decision to quasi-trespass her.[88]  And there are no facts from either side to suggest that District has ever given her any other avenue to challenge that decision.  The rules set out in the letter have no sunset date.[89]  Finally, it appears that the letter may have (at least in part) cost Ms. Bosch a job.[90]

Given all this, it is not surprising that Ms. Bosch turned to the judicial system for relief.  It is also not surprising that the District, the Superintendent, and the City are aggressively defending their actions—especially in light of the terrible spate of school shootings that the country has suffered in the last quarter of a century.

## B.  Procedural History

This case was filed on July 25, 2022.[91]  The Amended Complaint, which is the operative Complaint, was filed on September 26, 2022.[92]  In that Amended Complaint, Ms. Bosch makes clear that the federal claims alleged in the lawsuit arise under § 1983 and § 1985.[93]  But she never

---

[87] *See* Ex. 9 (Dr. Thurman's Police Report) to Defs.' Mot. for Summ. J. (Doc. 44-1) at 74.

[88] *See* Ex. 2 (Letter) to Pl.'s Mot. for Partial Summ. J. (Doc. 42-2) (giving no opportunity for Ms. Bosch to challenge or otherwise appeal the District's determination to limit her access to District property).

[89] *See id*.

[90] *See* Ex. 1 (Dep. of Melissa Bosch) to Defs.' Mot. for Summ. J. (Doc. 44-1) at 135:11–137:6.

[91] *See* Compl. (Doc. 1).

[92] *See* Am. Compl. (Doc. 11).

[93] *See id*. ¶¶ 12–13, 24–42.

suggests the vehicle under which any pendent state law claims arise—e.g., the Arkansas Civil Rights Act.[94]

Ms. Bosch brings the following claims under § 1983 against the Cabot Public School District and Superintendent Thurman in his official capacity:

(1)    a First Amendment retaliation claim with respect to Ms. Bosch's purportedly threatening statement;[95]

(2)    a First Amendment retaliation claim with respect to Ms. Bosch's association with Moms for Liberty and related political activities;[96]

(3)    a straight First Amendment claim that restricting Ms. Bosch's access to the school prevents her from speaking, assembling, or associating with teachers, staff, and other parents;[97]

(4)    a Fourteenth Amendment procedural due process claim with respect to the lack of notice and a hearing before or after the issuance of the letter;[98]

(5)    a Fourteenth Amendment substantive due process claim with respect to the right to parent and control a child's education;[99]

(6)    a Fourteenth Amendment substantive due process claim predicated on allegedly arbitrary government action;[100] and

(7)    a Fourteenth Amendment equal protection claim concerning how she was treated versus how others similarly situated were treated.[101]

---

[94] See id. ¶ 31.

[95] See id. ¶¶ 31–35.

[96] See id. ¶¶ 32.D–F.

[97] See id. ¶ 32.A.

[98] See id. ¶ 36.

[99] See id. ¶ 33.

[100] See id. ¶ 36.C.

[101] See id. ¶ 37. Ms. Bosch also made a Fourteenth Amendment privileges and immunities claim with respect to the right to access and travel across public lands. But she has since explicitly abandoned this claim. See Feb. 6, 2024 Hr'g Tr. (Rough) at 8.

Ms. Bosch sues all the Defendants (including the City) under § 1985, alleging a conspiracy to violate her civil rights.[102]  She also obliquely references claims for violations of Article 2, sections 2 and 6 of the Arkansas Constitution.[103]  As remedies for the foregoing claims, Ms. Bosch seeks declaratory relief, injunctive relief, mandamus relief, compensatory damages, and punitive damages.[104]

On October 9, 2023, all the parties filed motions for summary judgment.[105]  Because this Order must ultimately wrestle with questions of waiver, the Court details the summary judgment briefing process far more than it would in other cases.  The Court starts with Ms. Bosch's Motion and then discusses the Defendants' Motions.

Ms. Bosch moved for "partial summary judgment as to liability."[106]  Her Brief was 10 pages long.[107]  The first two pages of the Brief are facts.[108]  There are only two developed arguments in the Brief: (1) her First Amendment retaliation claim with respect to her purportedly threatening statement; and (2) her procedural due process claim.[109]  The retaliation argument is four pages long.[110]  And the procedural due process argument is about one page long.[111]  The other

---

[102] *See* Am. Compl. (Doc. 11) ¶ 13, 39.

[103] *See id.* ¶ 31.

[104] *See id.* ¶¶ 43–63.  Ms. Bosch's claim for punitive damages is out.  The District and Superintendent moved for summary judgment on punitive damages, arguing that punitive damages are not recoverable against a municipal entity under § 1983.  *See* Br. in Supp. of Defs.' Mot. for Summ. J. (Doc. 45) at 32–33.  Ms. Bosch never opposed summary judgment on these grounds.  *See* Pl.'s Resp. to Defs.' Motions for Summ. J. (Doc. 60) at 1–4.  But even if she had, punitive damages are not recoverable against a municipality.  *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267–68 (1981) (holding that a municipality is immune from punitive damages under § 1983).

[105] *See* Docs. 38, 42, 44.

[106] *See* Pl.'s Mot. for Partial Summ. J. (Doc. 42) at 1.

[107] *See id.*

[108] *See id.* at 1–2.

[109] *See id.* at 3–10.

[110] *See id.* at 5–8.

[111] *See id.* at 8–10.

two pages consist of one- or two-sentence boilerplate recitations of some of Ms. Bosch's other claims—without any elaboration.[112]  The only other thing of note in the Brief is a one-sentence conclusion that the Defendants "had the power of a policy maker clothed with authority of state and government law."[113]

The City's Response Brief was eight pages long.[114]  It specifically addressed the First Amendment retaliation claim with respect to Ms. Bosch's purportedly threatening statement.[115]  It specifically addressed the procedural due process claim.[116]  And it specifically argued that it was entitled to summary judgment under *Monell* because there was no municipal policy, practice, or custom that was the moving force behind any alleged violation of Ms. Bosch's constitutional rights.[117]  In addition, the Brief specifically "incorporate[d] all arguments contained in [the City's] Brief in Support of Summary Judgment."[118]  As will be discussed below, that Brief addressed all of Ms. Bosch's claims.  Proceeding this way was understandable, because Ms. Bosch's Motion for Partial Summary Judgment included (as the Court has already explained) only terse, boilerplate references to a plethora of her other claims.

For much the same reason, the 11-page Response Brief from the District and Superintendent also adopted by reference arguments made in other summary judgment papers.[119]  The District and Superintendent adopted all the arguments they made in their own Motion for

---

[112] *See id.* at 3–4.

[113] *Id.* at 3.

[114] *See* Def.'s Resp. to Pl.'s Mot. for Partial Summ. J. (Doc. 54).

[115] *See id.* at 3–4.

[116] *See id.* at 4–5.

[117] *See id.* at 6–8.  The City also argues that Ms. Bosch's state constitutional claims rise and fall with her federal claims. *See id.* at 5–6.

[118] Def.'s Resp. to Pl.'s Mot. for Partial Summ. J. (Doc. 54) at 1.  Fed. R. Civ. P. 10(c) allows this.

[119] *See* Defs.' Resp. to Pl.'s Mot. for Partial Summ. J. (Doc. 56) at 2.

Summary Judgment, as well as all the arguments the City made in its Motion for Summary Judgment and in its Response to Ms. Bosch's Motion for Summary Judgment.[120]  The District and Superintendent then went on to directly address whether Ms. Bosch had a liberty interest in being on school property,[121] whether the Defendants engaged in First Amendment retaliation for the purportedly threatening statement or for other political activity,[122] and whether the Defendants were constitutionally required to hold a hearing before or after issuing the quasi-trespass letter.[123]

Ms. Bosch filed a three-page Reply.[124]  The reply addressed only the First Amendment retaliation issue.[125]  Specifically, it addressed (1) whether Ms. Bosch's statement was a true threat,[126] (2) whether the substantial disruption test from *Tinker* applies to off-campus, adult speech,[127] (3) whether the substantial disruption test was met even if it applies,[128] and (4) the likelihood that the District was retaliating against Ms. Bosch for other political activity in addition to the purportedly threatening statements.[129]  The Reply did not mention any other claim.[130]  The Reply also did not address Defendants' *Monell* arguments.[131]

---

[120] *See id.*

[121] *See id.* at 3, 10–11.

[122] *See id.* at 3–10.

[123] *See id.* at 10–11.

[124] *See* Pl.'s Reply in Supp. of Mot. for Partial Summ. J. (Doc. 65) .

[125] *See id.* at 1–3.

[126] *See id.* at 1.

[127] *See id.* at 2–3.

[128] *See id.*

[129] *See id.* at 3.

[130] *See generally id.*

[131] *See generally id.*

As for the Defendants' summary judgment motions, they moved for summary judgment on all claims.[132]  The City's Brief was 17 pages long.[133]  It directly challenged Ms. Bosch's First Amendment retaliation claim with respect to her purportedly threatening statement.[134]  It directly challenged her pure First Amendment claim.[135]  It directly challenged her substantive due process, equal protection, and procedural due process claims.[136]  It directly challenged her scantily-pled state constitutional claims.[137]  And it directly addressed her § 1985 claims.[138]  It also explained that the City was entitled to summary judgment under *Monell* because there was no municipal policy, practice, or custom that was the moving force behind any alleged violation of Ms. Bosch's constitutional rights.[139]

The District and Superintendent's Brief was 34 pages long.[140]  It directly challenged Ms. Bosch's pure First Amendment claims,[141] First Amendment retaliation claims (both respecting her purportedly threatening statement and respecting her other political activity and associations),[142] procedural due process claim,[143] substantive due process claims,[144] equal

---

[132] *See* Br. in Supp. of Def.'s Mot. for Summ J. (Doc 39) at 1; Br. in Supp. of Defs.' Mot. for Summ. J. (Doc. 45) at 6–31.

[133] *See* Br. in Supp. of Def.'s Mot. for Summ. J. (Doc. 39).

[134] *See id*. at 3–7.

[135] *See id*. at 4–8.

[136] *See id*. at 9–13.

[137] *See id*. at 13.

[138] *See id*. at 13–15.

[139] *See id*. at 15–17; Defs.' Resp. to Pl.'s Mot. for Partial Summ. J. (Doc. 56) at 2 (adopting and incorporating the City of Cabot's Brief in Support of Summary Judgment).

[140] *See* Br. in Supp. of Defs.' Mot. for Summ. J. (Doc. 45).

[141] *See id*. at 6–8, 17–21.

[142] *See id*. at 9–17.

[143] *See id*. at 23–25.

[144] *See id*. at 21–23.

protection claim,[145] § 1985 claim,[146] state constitutional claims,[147] and her request for punitive damages.[148]

Plaintiff filed a Combined Brief in Response to Defendants' Motions for Summary Judgment.[149]  Her Response Brief was four pages long.[150]  It addressed one issue and one issue only: Ms. Bosch's First Amendment retaliation claim with respect to her purportedly threatening statements.[151]  The brief did not even mention any of the other challenged claims, the *Monell* issue, or the punitive damages issue.[152]

The City's five-page Reply incorporated all of the arguments in its other summary judgment papers.[153]  The City's Reply specifically addressed Ms. Bosch's arguments concerning the substantial disruption doctrine from *Tinker*.[154]  The Reply from the District and Superintendent was nine pages long.[155]  It adopted all arguments of all Defendants in all the summary judgment papers.[156]  It asserted that Ms. Bosch did "not dispute summary judgment" on any claim except the First Amendment retaliation claim.[157]  It argued (correctly, as the Court has concluded above) that many of the facts that Ms. Bosch purportedly disputes should be deemed undisputed because

---

[145] *See id.* at 26–27.

[146] *See id.* at 28–30.

[147] *See id.* at 30–31.

[148] *See id.* at 32–33.

[149] *See* Pl.'s Resp. to Defs.' Motions for Summ. J. (Doc. 60).

[150] *See id.*

[151] *See id.*

[152] *See id.*

[153] *See* Reply Br. in Supp. of Def.'s Mot. for Summ. J. (Doc. 64) at 1.

[154] *See id.* at 3–5.

[155] *See* Reply Br. in Supp. of Defs.' Mot. for Summ. J. (Doc. 66).

[156] *See id.* at 2.

[157] *Id.*

of her failure to properly controvert them.[158]   Finally, it addressed the specifics of the First

Amendment retaliation claims,[159] the pure free speech claim,[160] and the issue of whether Ms. Bosch

has a liberty interest in coming onto District property.[161]

The Court held a summary judgment hearing on February 6, 2024.[162]   At that hearing,

Plaintiff all but conceded she had waived the § 1985 claim:

> THE COURT:  It appears to me that the Defendants, one or both of them, properly
> moved for summary judgment on the 1985 claim.  And it appears to me that in your
> summary judgment briefing – and when I say that, I mean all of your summary
> judgment briefing, whether it was the responses –
>
> MR. STEINBUCH:  Yes.
>
> THE COURT:  – or your affirmative briefing, you did not mention 1985 at all.  That
> strikes me as meaning you have waived the 1985 issue.  If you disagree with that,
> I need to know why.
>
> MR. STEINBUCH:  I take Your Honor's word that I didn't mention it.  I mean, I
> don't recall specifically.  If I fail to respond to the argument, is it a waiver, probably.
> Yeah.
>
> THE COURT:  Okay.  So it strikes me that you've waived the 1985 issue.
>
> MR. STEINBUCH:  Okay.[163]

The Court then inquired whether Ms. Bosch had similarly waived all of her claims aside from the

First Amendment retaliation and procedural due process claims.[164]   The Court invited Ms. Bosch

(through counsel) to show the Court where in the briefing she had addressed any claims aside from

---

[158] *See id.* at 2–3.

[159] *See id.* at 4–7.

[160] *See id.* at 7–8.

[161] *See id.* at 3–4.

[162] *See* Clerk's Minutes (Doc. 68).

[163] Feb. 6, 2024 Hr'g Tr. (Rough) at 9–10.

[164] *See id.* at 10–12.

the First Amendment retaliation and procedural due process claims.[165]  The Court explained that (1) "the only thing I see that you have actually briefed is the First Amendment retaliation claim and the procedural due process claim[,]" and (2) "[s]o unless you show me where you've briefed those other [claims] and not just mentioned it in a line, but actually developed it . . . I am going to consider those waived."[166]

Ms. Bosch's counsel acknowledged this invitation, but never took the Court up on it.[167] During Ms. Bosch's affirmative argument time, Ms. Bosch's counsel explained that he would address the point on rebuttal.

> THE COURT:  . . . If you think you have any of those claims left, except for First Amendment retaliation and procedural due process, then I need to know which ones you think you have left, and I need you to show me in the briefing—which is one of the reasons I asked for y'all to have the briefing here.  I need you to show me in the briefing where you made those arguments and developed them.
>
> MR. STEINBUCH:  Okay, your Honor.  And I'll be happy to do that.  Do you want me to do that now or do you want –
>
> THE COURT:  I do, if you –
>
> MR. STEINBUCH:  I mean, I don't know offhand to be honest with you, right?  That's the point.  And let me sort of contextualize.  Of course, in this case, we rely heavily on the analysis, not no precedent, of the district court in Dallas in the *Cain* case that, you know, we've attached to the filings.  And in that case, the Court dismissed out all of the other claims, except the First Amendment claims.  So we saw that as largely driving the analysis of this Court.  With that said, I don't know which of the other claims I've mentioned in the briefing or not.  I can do that now.  I can do it after.
>
> THE COURT:  Well, what I think I would like – what I would like you to do, is when you sit down –
>
> MR. STEINBUCH:  Right.
>
> THE COURT:  – one of the things I'd like you to do is go through the briefing.

---

[165] *See id.* at 10–11.

[166] *Id.* at 12.

[167] *See id.* at 10–11, 69–77.

MR. STEINBUCH:  Yes, sir.[168]

On rebuttal, Ms. Bosch's counsel focused on legal arguments to avoid or excuse waiver.[169]  But he did not point the Court to any portions of Ms. Bosch's summary judgment briefing:

> THE COURT:  [I]t's a fair legal argument.  I want to make sure though, it suggests to me that you're not telling me that I'm reading your briefs wrong.  That, I'm right when I say you didn't raise and sufficiently develop the other issues.  It's just that you think the consequence of that is not waiver, or if it's waiver, I can overlook it; is that fair to say?
>
> MR. STEINBUCH:  Partially.  Meaning, as I sat down and listened to opposing counsel as well as gone through the briefs, I can't promise you that I have marked all the sections correctly, right?  But I certainly can tell you having written those briefs, that we did not fully address all of the arguments, and I will leave it to the Court's sound discretion to differentiate which arguments were fully addressed— let me change that, sufficiently addressed outside the scope of the First Amendment retaliation and the due process – due process.
>
> THE COURT:  Procedural due process.
>
> MR. STEINBUCH:  Thank you.  Yeah, procedural due process, right.  Great term.[170]

In addition to the broader waiver point—regarding waiver of most claims—the Court homed in on a waiver question that would affect the two claims (First Amendment retaliation and procedural due process) on which Ms. Bosch actually spent attention in her summary judgment papers.[171]  That narrower waiver question is whether Ms. Bosch waived the *Monell* issue by failing to respond to it.  Recall that the Defendants argued—either expressly or by way of adoption—that they could not be liable because the alleged unconstitutional acts were not caused by a policy,

---

[168] Feb. 6, 2024 Hr'g Tr. (Rough) at 10–11.

[169] *See id*. at 69–70, 72.

[170] *See id*. at 72.

[171] *See id*. at 10–12.

custom, or practice.[172]   Ms. Bosch didn't counter this argument in her Response, and the only

indirect, oblique reference to *Monell* in Ms. Bosch's Motion for Partial Summary Judgment is a

single-sentence, unsupported assertion that the Defendants were policymakers.[173]

The Court engaged in a somewhat extensive colloquy with Ms. Bosch's counsel on this

point:

> THE COURT: Let me talk to you specifically for a second about the First
> Amendment retaliation claim.
>
> MR. STEINBUCH:  Yes, sir.
>
> THE COURT:  And the procedural due process claim.
>
> MR. STEINBUCH:  Yes, sir.
>
> THE COURT:  And, here, I do expect you to – I hope you're going to have some
> push back, and I want to know what it is.
>
> MR. STEINBUCH:  Okay.
>
> THE COURT:  The Defendants made an argument that you didn't talk about
> whether you sued these – anybody in their individual capacity or official capacity,
> and so the law then requires it to just be an official capacity claim.
>
> MR. STEINBUCH:  Yes.  That's what it is for us.
>
> THE COURT:  Okay.  Good.  Which requires under *Monell*, a custom[] [or] policy.
>
> MR. STEINBUCH:  Right.
>
> THE COURT:  The only thing you said on that point that I could find in your briefs
> was that the Defendants are policymakers.
>
> MR. STEINBUCH:  That's correct.
>
> THE COURT:  But you didn't explain why.  You didn't explain the law on it.  You
> didn't explain the facts.  You didn't, quite frankly, even explain who you're talking

---

[172] *See* Br. in Supp. of Def.'s Mot. for Summ. J. (Doc. 39) at 15–17; Defs.' Resp. to Pl.'s Mot. for Partial Summ. J. (Doc. 56) at 2 (adopting and incorporating the City of Cabot's Brief in Support of Summary Judgment).

[173] *See* Pl.'s Mot. for Partial Summ. J. (Doc. 42) at 3.

about when you say the Defendants are policymakers.  So the next question I have is, have you waived those issues?

MR. STEINBUCH:  I don't think so.  Meaning, as I have articulated a few moments ago, they are literally the heads of both agencies, right?  The head of the police, although we've – no.  No.  No.  Let me not expound on that at the moment.  The head of the police and the head of the school district.  It's superintendent, right?  So while I'm not a big fan of *res ipsa loquitur*, perhaps this is the first instance that I have been able to use it in court.  I think that is indeed the archetype of a policy maker.

THE COURT:  But isn't the policy maker for the school district the school board?

MR. STEINBUCH:  In some respects, yes, right?  But I'm not sure those are necessarily competing, right?  Meaning, the policy maker for the school board – the district is the school board for ongoing, you know, planning, shall we say for lack of a better locution.  But the superintendent is the policy maker for day-to-day operations.

THE COURT:  So how do I know that?  And this is where honestly I'm a little bit frustrated.  It's one thing if you told me in your brief that Arkansas law makes the superintendent a policy maker and you cited me to the section of Arkansas law.  It's another thing if you told me that there is a long list of cases that say a superintendent is a policy maker and cited those long list of cases.  But you didn't do any of that.  And so I'm wondering whether you legally developed that argument enough.

MR. STEINBUCH:  That's of course for you ultimately to decide, right?  But, like I said, frankly, it didn't strike me from reading the briefs from opposing counsel nor in writing our brief that that was something that was particularly in contention.  That may be my failing.

THE COURT:  Okay.  But your argument as I understand it, and tell me if this is wrong, I really need to know.

MR. STEINBUCH:  No, I understand.

THE COURT:  Your argument is it's just – it's just very clear that the superintendent is a policy maker.

MR. STEINBUCH:  Indeed.

THE COURT:  And you think the superintendent is the one who made this decision, and so that is where they get *Monell* liability.

MR. STEINBUCH:  Yes, sir.  He signed the letter.

THE COURT:  I understand.[174]

Later on in the argument, the Court re-emphasized the importance of the *Monell* waiver

question:

> THE COURT:  In my view, your claim really comes down – your retaliation claim really comes down to, was this a true threat, did it apply under the substantial disruption *Tinker* analysis, which honestly, I'm going to ask a lot of questions of other side on.  If you want to say anything about that when you get back up, that's fine, and then was there a chill.  I mean, that's my view to what the real live, active dispute here is.
>
> MR. STEINBUCH:  Indeed, that goes to the first point that the Court made about what causes of action we are most pursuing.
>
> THE COURT:  And I will tell you, again, this is your case.
>
> MR. STEINBUCH:  Yes, sir.
>
> THE COURT:  And part of the reason you are here is to be a zealous advocate for your client, so I am not suggesting that you should give up any claims.
>
> MR. STEINBUCH:  Understood.
>
> THE COURT:  But I would like when you go back to your chair to really look what you think under the briefing you waived because the way I see this, at least at this point, is really the only thing that potentially you are still proceeding on is the First Amendment retaliation claim and the procedural due process claim and everything else is waived.  If you came back up here and said, Judge, you know what, you're right, obviously that would go a long way to advancing the case and making it a quicker process when I write an opinion.  On the other hand, you shouldn't do that if you feel like I'm wrong.
>
> MR. STEINBUCH:  Indeed.
>
> THE COURT:  However, there is one caveat to that.  I do really want to make sure I get your full opinion on the *Monell* issue.  And the reason I do there is because if you waive that, that could doom your First Amendment retaliation claim and your procedural due process claim, and so I think that is really important.  The way I understand the ground right now is you don't believe you've waived that because you said the Defendants, and really you mean the school superintendent and the chief of police, are policymakers.

---

[174] Feb. 6, 2024 Hr'g Tr. (Rough) at 13–15.

MR. STEINBUCH:  Right.

THE COURT:  And you think that statement is enough.  But I want to make sure after you go sit down, you look through the briefs and make sure that is really all you said on it.

MR. STEINBUCH:  I'll take a look, yes.

THE COURT:  Thank you.[175]

As one would expect given this colloquy, Ms. Bosch's counsel began his rebuttal by discussing the *Monell* waiver question.  But he essentially conceded that his summary judgment briefs did not address the Defendants' *Monell* arguments.

THE COURT:  We've gone through a lot, so instead of five minutes, I'm going to give you ten minutes.

MR. STEINBUCH:  I don't know if I'll need it, but we'll find out.  I didn't think I'd need the first half and I did.  So a few things, the *Monell* question.  So my co-counsel Mr. Lancaster informed me and did all the research during this hearing, which is always the better way to get an answer, as to a doctrine called—and pardon my Latin—*Iura novit curia*, the Court's presumed to know the law, but –

THE COURT:  That's a dangerous doctrine.

MR. STEINBUCH:  Right, I know, on many levels.  But what is meant by this notion is whether or not I cite to a statute or a case law, if there is a statute or a case law and you find it, that's the law.  So this goes to this waiver notion, right?  And so let me give you –

THE COURT:  How do you square that with the cases that say, if there are undeveloped arguments, they're considered waived?  If the doctrine you just quoted me was essentially the end all and be all, there wouldn't be waiver in the undeveloped argument situation.

MR. STEINBUCH:  Look, this is an ongoing debate, shall we say, within both the academy and the judiciary as to what is the role of a judge, right?  So if I come in here incompetent, and maybe from time to time I come close to that standard, does that mean that my client is not entitled to what the law dictates if you know that the law dictates and simply I didn't say it?  And it's always been frankly a personal frustration of mine, not in terms of my appearances, I assure you.  Maybe I've come close to that line in the past, but because I see other people with counsel that I'm

---

[175] *Id.* at 38–39.

far more comfortable maligning than myself.  And so it always concerns me that, okay, that fellow or woman didn't do a great job, but we all know, right, we all know this is the law. . . .[176]

Essentially, counsel's point was that the Court should excuse Ms. Bosch's failure to adequately brief the *Monell* policymaker issue.

At oral argument, both parties also directly addressed the merits of the First Amendment retaliation claims.[177]  After the conclusion of the argument, the Court explained it would take the case under advisement.[178]

## II.    Discussion

The Eighth Circuit has been clear that "failure to oppose a basis for summary judgment constitutes waiver of that argument."[179]  Even Ms. Bosch conceded at the summary judgment hearing that the failure to respond to a potentially dispositive argument in favor of summary judgment constitutes a waiver of the challenged claim.[180]  Given this rule, it is extraordinarily clear that most of Ms. Bosch's claims end here.  Ms. Bosch's Response to the Defendants' Motions for Summary Judgment addressed only her First Amendment retaliation claims.  Her Motion for Partial Summary Judgment addressed only her First Amendment retaliation and procedural due process claims.  Because all the other claims went unaddressed, they are clearly waived.[181]

---

[176] *Id*. at 69–70.

[177] *See id*. at 16–27, 34–38, 44–67, 74–77.

[178] *See id*. at 77.

[179] *Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009).  *See also Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 540 (8th Cir. 2020) ("The 'failure to oppose a basis for summary judgment constitutes waiver of that argument,' because the non-moving party is responsible for demonstrating any genuine dispute of material fact that would preclude summary judgment." (quoting *Satcher*, 558 F.3d at 735)).

[180] *See* Feb. 6, 2024 Hr'g Tr. (Rough) at 10 ("If I fail to respond to the argument, is it a waiver, probably.  Yeah.").

[181] The Court will consider Ms. Bosch's Motion for Summary Judgment as sufficient to preserve the procedural due process claim, even though Ms. Bosch failed to even mention the claim in her Response to Defendants' Motions for Summary Judgment.  In her Motion for Partial Summary Judgment and Incorporated Brief in Support, Ms. Bosch argues that:

To be sure, one could quibble with the assertion that all the other claims went *unaddressed* in Ms. Bosch's Motion for Partial Summary Judgment.  But undeveloped arguments are waived just like completely omitted arguments are.[182]  To the extent that Ms. Bosch scantily references any of these other claims in her Motion for Partial Summary Judgment, the bare mention of a particular claim is not enough to oppose summary judgment on that claim.[183]  For example, in Ms. Bosch's affirmative summary judgment motion, she asserts that the Defendants violated her right to associate and assemble, right to equal protection, and right to privileges and immunities without any explanation or legal citation.[184]  Ms. Bosch also claims that "Defendants' exercise of police power fails to comply with substantive due process principles, as it is and has been arbitrary and unreasonable[,]" and "Defendants' actions and omissions violate substantive due process because they have been arbitrary and unreasonable."[185]  These are nothing more than recitations of mere legal conclusions.  They were made without any supporting citations, and without any legal

---

The Fourteenth Amendment prohibits states from depriving any person "of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV, § 1.  As a general rule, due process requires that "individuals must receive notice and an opportunity to be heard before the Government deprives them."  *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48, 114 S. Ct. 492, 126 L. Ed. 2d 490 (1993); *see also Humane Soc'y of Marshall Cty. v. Adams*, 439 So. 2d 150, 152 (Ala. 1983) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.").  Thus, due process generally requires that the state afford a party threatened with a deprivation of rights a process involving pre-deprivation notice and access to a tribunal in which the merits of the deprivation may be fairly challenged.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985).

Pl.'s Mot. for Partial Summ. J. (Doc. 42) at 9–10.  While short and to the point, the Court believes Ms. Bosch's argument is sufficient to avoid claim-wide waiver.  By its very nature, moving for summary judgment is opposing summary judgment in favor of the other party (or here, parties).

[182] *See RJT Invs. X v. Comm'r*, 491 F.3d 732, 738 n.9 (8th Cir. 2007).

[183] *See, e.g.*, *Cubillos v. Holder*, 565 F.3d 1054, 1058 n.7 (8th Cir. 2009) (explaining that mere reference to an issue did not properly develop the argument, and, therefore, the issue was deemed waived).

[184] *See* Pl.'s Mot. for Partial Summ. J. (Doc. 42) at 4.

[185] *See id.* at 9.

analysis.  These are just the types of circumstances in which the Eighth Circuit has considered a party's arguments to be undeveloped and therefore waived.[186]

This leaves on the table only the First Amendment retaliation and procedural due process claims against the District and the Superintendent.[187]  The problem for Ms. Bosch here is *Monell*—more specifically, the problem is Ms. Bosch's failure to respond to the Defendants' argument that any alleged retaliation for speech or any procedural due process violation was not the result of a policy, practice, or custom.  Here's why.

The parties agree that the District is a municipal entity.[188]  All parties further agree that Superintendent Thurman is being sued in his official capacity only.[189]  That's just another way of suing the School District.  "A plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer and therefore must establish the municipality's liability for the alleged conduct."[190]  Long story short, Ms. Bosch's remaining claims are subject to *Monell*.[191]  As recited in the procedural history portion of this Order, one of the Defendants'

---

[186] *See, e.g.*, *United States v. Stuckey*, 220 F.3d 976, 982 (8th Cir. 2000).  Even assuming waiver does not operate as an absolute bar to the Court considering the claims on the merits, there is no good reason to do so here.  Ms. Bosch made clear at oral argument that the claim she is really interested in pressing is the First Amendment retaliation claim. *See* Feb. 6, 2024 Hr'g Tr. (Rough) at 11–12.

[187] As discussed in note 1 *supra*, logically the only claim against the City could be the § 1985 conspiracy claim.  If the Amended Complaint meant to bring any of the other claims against the City, they would fail.  The only actions attributable to the City were the delivery of the letter issued by the District and the investigation into the police report filed by the Dr. Thurman.  Ms. Bosch does not suggest either of those specific actions violated the federal or state constitutions.  The Court noted this at oral argument in its colloquy with the City.  *See* Feb. 6, 2024 Hr'g Tr. (Rough) at 68–69.  And Ms. Bosch's counsel did not take issue with that conclusion in the immediately-subsequent rebuttal. *See id.* at 69–77.

[188] *See id.* at 13, 43.

[189] *See id.* at 13; Br. in Supp. of Defs.' Mot. for Summ. J. (Doc. 45) at 31.  *See also Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (explaining that a public official is sued in his official capacity when the plaintiff does not include an "express statement" that he is sued in his individual capacity).

[190] *Kelly*, 813 F.3d at 1075.

[191] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  *See also Artis*, 161 F.3d at 1181 (treating a school district as a municipal entity for purposes of § 1983).  *See also Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 34 (2010) ("*Monell*'s holding applies to § 1983 claims against municipalities for prospective relief as well as to claims for damages.").

arguments for summary judgment was that (1) *Monell* required Ms. Bosch to provide evidence of a municipal policy, practice, or custom that was the moving force behind any alleged violation of Ms. Bosch's constitutional rights, and (2) she had not done so.[192]

Ms. Bosch did not respond to this argument at all in her papers opposing summary judgment. And in her papers seeking summary judgment, there is only one bald assertion that the Defendants "had the power of a policy maker clothed with authority of state and government law[,]" and "implemented government policy under the authority of state law."[193] Considering all her summary judgment papers together, Ms. Bosch provided no law or analysis to support her assertion. And the only potentially relevant fact she provided was that Dr. Thurman was the Superintendent.[194]

Ms. Bosch's failure to meaningfully address *Monell* constitutes a waiver of the issue.[195] That is true whether one considers Ms. Bosch to have not responded on the *Monell* issue at all or whether one considers the single-sentence response to be entirely undeveloped.[196] Either way, Ms. Bosch is deemed to have given in on the question whether a policy, custom, or practice was the cause of any alleged retaliation for speech or the cause of any alleged procedural due process violation. And because proving a policy, custom, or practice was the cause of any alleged retaliation for speech or the cause of any alleged procedural due process violation is a prerequisite for liability, the District and Superintendent are entitled to summary judgment on those claims.

---

[192] *See* Br. in Supp. of Def.'s Mot. for Summ. J. (Doc. 39) at 15–17; Defs.' Resp. to Pl.'s Mot. for Partial Summ. J. (Doc. 56) at 2 (adopting and incorporating the City's Brief in Support of Summary Judgment).

[193] Pl.'s Mot. for Partial Summ. J. (Doc. 42) at 3.

[194] In her rebuttal time at oral argument, Ms. Bosch's counsel attempted to provide citations to state statutes and caselaw for the proposition that a Superintendent is a policymaker. *See* Feb. 6, 2024 Hr'g Tr. (Rough) at 73–74. But counsel conceded that none of that law or analysis was in Ms. Bosch's briefs. *See id.* at 74. Oral argument rebuttal cannot be used to raise arguments that were not raised in briefing.

[195] *See RJT Invs.*, 491 F.3d at 738 n.9.

[196] *See id.* (discussing undeveloped arguments); *see also Satcher*, 558 F.3d at 735 (discussing unopposed arguments).

Unlike the Court's ruling with respect to all the other claims in this case, the Court has significant unease with applying the waiver doctrine in a way that dooms Ms. Bosch's First Amendment retaliation claims. There are two reasons for this.

First, in reviewing the record, the Court stumbled across evidence that strongly suggests the School Board directed Superintendent Thurman to send the quasi-trespass letter. The Court has already recited this evidence in the background facts section of this Order.[197] If the School Board made the quasi-trespass decision, it would be very difficult to say it was not a policy sufficient to establish municipal liability. So, throwing out the First Amendment retaliation and procedural due process claims on *Monell* grounds alone feels a little like sticking one's head in the sand.

Second, absent waiver of the *Monell* issue, the First Amendment retaliation claim with respect to Ms. Bosch's purportedly threatening statement would likely go on to a jury.[198] Given the Court's decision to find waiver here, a full merits analysis is neither appropriate nor advisable. But, in summary, the Court is strongly leaning in the following direction: (1) Ms. Bosch's statement is probably constitutionally-protected hyperbole as a matter of law,[199] but at a minimum the question of whether it's constitutionally-protected hyperbole or a true threat gets to the jury;[200]

---

[197] *See supra*, pages 12–13.

[198] The First Amendment retaliation claim with respect to other political activity would not go to a jury. There is no evidence from which a reasonable jury could conclude any causal connection between Ms. Bosch's other political activity and the quasi-trespass action by the District. Among many other things, the quasi-trespass decision was limited to Ms. Bosch; it did not include any other Moms for Liberty members of political activists of the same stripe. This only makes sense if the letter was related to Ms. Bosch's purportedly threatening statement as opposed to her other political activity. The procedural due process claim would also fail at summary judgment, for the reasons set out in *Lovern v. Edwards*, 190 F.3d 648, 656 (4th Cir. 1999), *Porter v. Duval Cnty. Sch. Bd.*, 406 F. App'x 460, 462 (11th Cir. 2010) (per curiam), and other similar cases. Essentially, Ms. Bosch does not have a property or liberty interest in coming on District grounds that would trigger the procedural due process requested.

[199] *See Watts v. United States*, 394 U.S. 705, 706–08 (1969) (holding that, given the context, the statement "[i]f they ever make me carry a rifle the first man I want to get in my sights is L.B.J." was not a true threat).

[200] *See Brandy v. City of St. Louis, Missouri*, 75 F.4th 908, 915 (8th Cir. 2023) ("In the absence of unusual facts . . . , the question whether a statement amounts to a true threat is a question generally left to a jury.").

(2) *Tinker's* substantial disruption doctrine does not apply to off-campus speech by adults;[201] (3) the restrictions and limitations placed on Ms. Bosch by the School District were a response to, and motivated by, her purportedly threatening statement;[202] and (4) whether the restrictions and limitations would chill a person of ordinary firmness from continuing in the activity is a triable question on which a reasonable jury could go either way.[203]

Despite the two reasons for caution just discussed, the Court does not believe the circumstances presented here provide sufficient justification to ignore the principle of party presentation.[204] That principle is deeply rooted in our judicial system. It serves to ensure judges maintain their role as umpires and avoid becoming fans.[205] The Court should not be in the business of saving litigants from the consequences of their conduct of the litigation—including their choices of what issues to develop and what issues not to develop.[206]

---

[201] No Supreme Court case nor any Eighth Circuit case has extended *Tinker's* substantial disruption doctrine to truly off-campus speech by adults. And, to the best of the Court's knowledge and the parties' knowledge, neither has any circuit court in this country. *See* Feb. 6, 2024 Hr'g Tr. (Rough) at 60–62. The few out-of-circuit district court cases identified by Defendants that have done so are unpersuasive—especially in light of the extreme caution urged by the Supreme Court in *Mahanoy* when extending *Tinker* to off-campus *student* speech. *See Mahanoy Area Sch. Dist. v. B.L. by & through Levy*, 141 S. Ct. 2038, 2045–46 (2021). Transforming a doctrine originally focused on school supervision of on-campus student speech into a new First Amendment exception applicable to adult speech anywhere and anytime is too far a leap for this Court. Neither the original understanding of the First Amendment nor the logic of the Supreme Court precedent suggests that such a breathtaking extension of *Tinker* would be appropriate. *See id.*; *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 508–09 (1969).

[202] *See Scheffler v. Molin*, 743 F.3d 619, 621 (8th Cir. 2014) (explaining that, among other things, a plaintiff must show that the adverse action—here, the District's decision to limit Ms. Bosch's access to District property—was motivated in part by the plaintiff's exercise of his or her constitutional rights—here, the statement Ms. Bosch made at the Moms for Liberty meeting).

[203] *See Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003) ("Ultimately, [the question of chill] is usually best left to the judgment of a jury, twelve ordinary people, than to that of a judge, one ordinary person. The jury, after all, represents the conscience of the community. It decides many similar questions—for example, what would a person of ordinary prudence have done in certain circumstances? Here, the matter is sufficiently close, in our view, to come within the jury's province.").

[204] *See Ivey v. Audrain Cnty., Missouri*, 968 F.3d 845, 851 (8th Cir. 2020) ("The principle of party presentation counsels against adopting theories of a plaintiff's case that he does not advance, much less one that he expressly disclaims.").

[205] *See id.* ("[J]udges should decide only questions presented by the parties." (internal quotation marks and citations omitted)).

[206] *See id.*

At oral argument, Ms. Bosch's counsel suggested that "it didn't strike [him] from reading the briefs from opposing counsel nor in writing [his] brief that [the *Monell* issue] was something that was particularly in contention."[207]   But the *Monell* issue was a key and clear part of the Defendants' summary judgment arguments.  The City dedicated multiple pages to the argument across three of its summary judgment papers.[208] And the School District and Superintendent made clear that they were adopting all the City's arguments.[209]  Ms. Bosch had every opportunity to identify and respond to this argument.  Indeed, it appears that Ms. Bosch knew from the very beginning that her claims required proving a policy, custom, or practice.  Otherwise, why allege in the Amended Complaint and assert (in a single sentence) in her Motion for Partial Summary Judgment that the Defendants were policymakers?[210]   Given that Ms. Bosch knew this was a necessary argument, her failure to develop it is that much worse.

Furthermore, Ms. Bosch's failure to address the Defendants' *Monell* argument was not an isolated failure.  It was part and parcel of a failure to address numerous arguments—indeed, the large majority of arguments—made by Defendants, as well as a failure to properly controvert facts set out by Defendants.  Essentially, Ms. Bosch appears to have briefed only the "sexy" issues in this case (e.g., true threat vs. substantial disruption vs. protected speech, as well as chilling effect) and left it to the Court to sort out all the other issues.  Ms. Bosch more or less said as much at oral argument.[211]  This is not the way to litigate a case.  *Caveat advocatus.  Caveat litigans.*

---

[207] Feb. 6, 2024 Hr'g Tr. (Rough) at 15.

[208] *See* Br. in Supp. of Def.'s Mot. for Summ. J. (Doc 39) at 15–17; Def.'s Resp. to Pl.'s Mot. for Partial Summ. J. (Doc. 54) at 6–8; Reply in Supp. of Def.'s Mot. for Summ. J. (Doc. 64) at 5.

[209] *See* Defs.' Resp. to Pl.'s Mot. for Partial Summ. J. (Doc. 56) at 2; Reply in Supp. of Defs.' Mot. for Summ. J. (Doc. 66) at 2.

[210] *See* Am. Compl. (Doc. 11) ¶ 26; Pl.'s Mot. for Partial Summ. J. (Doc. 42) at 3.

[211] *See* Feb. 6, 2024 Hr'g Tr. (Rough) at 69–70.

As to the Court's independent discovery of evidence that the School Board likely directed the creation and transmission of the letter, that discovery is less worrisome because Ms. Bosch did not pursue this legal theory. Her position was (and still is) that Superintendent Thurman is a policymaker. Ms. Bosch never pressed an argument that the Board was responsible for the letter. Even after the Court brought up this evidence during oral argument, Ms. Bosch's counsel still maintained the position that the reason the letter qualifies as a policy is that the Superintendent is a policymaker.[212] It is Ms. Bosch's right to elect what legal theory she wants to pursue. But it is also her responsibility to support the argument with law and analysis. She failed to do so.

Finally, the failure prejudiced Defendants. Had Ms. Bosch responded to their *Monell* argument in her briefing, Defendants could have reviewed the facts and law on which Ms. Bosch relied and addressed them in Reply briefs. Ms. Bosch's failure to respond prevented the Defendants from having that opportunity. Instead, she dumped a bunch of *Monell*-related law and statutes on the Court at the last possible moment—during her rebuttal argument at the hearing.[213] That's not fair to the Defendants, let alone the Court.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment (Doc. 42) is DENIED and Defendants' Motions for Summary Judgment (Docs. 38 and 44) are GRANTED. The Court wishes to emphasize that an appeal of this Order would be quite reasonable. And the Court would be neither surprised nor perturbed if the Eighth Circuit concluded that this Court overapplied the waiver doctrine with respect to the *Monell* issue or undervalued the reasons to overlook any waiver of the *Monell* issue by Ms. Bosch. Were the Eighth Circuit to reverse on this

---

[212] *See id.* at 14–15, 73.

[213] *See* Feb. 6, 2024 Hr'g Tr. (Rough) at 73–74.

waiver issue, the Court would likely move this case to trial on the First Amendment retaliation claim with respect to the purportedly threatening statement made by Ms. Bosch.[214]  It certainly seems like a reasonable jury could go either way on that issue.[215]

      IT IS SO ORDERED this 28th day of February 2024.

LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[214] The Court has previously (even if briefly) explained why it would likely grant Defendants summary judgment on the merits of the procedural due process claim and the First Amendment retaliation claims based on Ms. Bosch's political activity, apart from the purportedly threatening statements. *See supra* note 198.

[215] The Court would likely wait until trial to make a final determination on whether the Court would (1) direct jurors as a matter of law that Ms. Bosch's statement was protected speech, or (2) let jurors determine whether Ms. Bosch's statement was protected speech or a true threat.